814 A.2d 1043

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. TIMOTHY R. MENDEZ, DEFENDANT–APPELLANT.

Argued September 9, 2002—Decided November 14, 2002.

202

*Jay L. Wilensky,* Assistant Deputy Public Defender, argued the cause for appellant (*Peter A. Garcia,* Acting Public Defender, attorney).

*Johanna Barba,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Acting Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

VERNIERO, J.

In this criminal appeal, we are called on to review defendant's conviction for tampering with physical evidence under *N.J.S.A.* 2C:28–6. A related issue is whether the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 2C:104–9 (Code), permits the State simultaneously to charge an accused with possessing and tampering with the same unit of controlled dangerous substance (CDS), in this case cocaine. We affirm the judgment of the Appellate Division upholding defendant's conviction. We also hold that when a defendant allegedly possesses and then destroys all or part of the same specimen of CDS, the Code permits the State to charge that defendant with both drug possession and tampering with physical evidence.

## I.

We summarize the facts adduced at trial. On May 8, 1998, State Trooper Brian Mulholland and his partner, Jay Miller, were driving in Alloway Township in a marked police vehicle. Trooper Mulholland drove the vehicle while his partner sat in the front passenger seat. Trooper Mulholland had been assigned to Alloway Township that evening to conduct surveillance of a specific residence suspected of being the site of illegal drug activity. The Salem County prosecutor had informed the trooper that defendant Timothy Mendez was the subject of outstanding warrants and that he had frequented the residence under surveillance.

Trooper Mulholland testified that he noticed headlights coming toward him and that when he looked further, he saw an approaching vehicle that straddled the center line as it traveled down the road. Defendant's brother drove the approaching vehicle with defendant in the passenger seat. To avoid a collision, the trooper drove the police car to the side of the road. After defendant's car passed the officers, Trooper Mulholland made a U-turn and began pursuing the vehicle.

Defendant's vehicle did not pull over notwithstanding that the trooper had activated the police car's overhead lights. After defendant and his brother drove through a stop sign and onto the grass, Trooper Mulholland activated the police car's siren, "takedown lights," and spotlight. Trooper Miller called a dispatcher and reported the incident as well as the license plate number of defendant's vehicle. The dispatcher informed the troopers that the plates had expired and that they were registered to Ruth Mendez (later determined to be defendant's mother).

A second police car soon joined the chase. During the pursuit, the troopers saw defendant throw small pieces of white paper out the window of his vehicle. The troopers also testified that they saw defendant turn around toward them, guzzle what appeared to be a can of Budweiser beer, and then throw the beer can out the car window. At that juncture Trooper Mulholland recognized defendant. Later, the troopers saw defendant pick up a number of unidentified objects and throw them out his car window.

The troopers also saw defendant throw a tan object "about the size of a baseball" out the same window. Then, defendant leaned both hands outside the car. He held a clear plastic bag, approximately the size of a fist, that "looked like it had white powder in it." Defendant ripped open the bag and made "a shaking motion out of the window[.]" Trooper Mulholland saw "a white puff of smoke or powder being emitted into the air. The puff of smoke went back and dissipated into the air." Trooper Miller testified that in view of defendant's hand motions defendant was "clearly

trying to get rid of whatever substance was in the bag[,] . . . making sure it wouldn't be found."

The chase finally ended when defendant's car pulled into a private driveway. After struggling briefly with defendant and his brother, the troopers arrested them. Trooper Mulholland conducted a search of the vehicle. He found a number of items in the car, including a police radio scanner and two small glassine bags, one of which contained a white powder that later tested positive for cocaine.

The troopers retraced the route of the chase in an effort to recover the items that defendant had tossed from his vehicle. They found a lottery ticket that was crumpled into a ball. They also found a glassine bag and a straw inside the crumpled ticket. The troopers deduced that defendant had thrown those items out of his car during the chase because they were "completely dry" and the road was wet from an earlier rain. The troopers were unable to locate any traces of the white powder that defendant had released, nor did they locate the fist-sized bag.

A grand jury indicted defendant for third-degree possession of a controlled dangerous substance, in violation of *N.J.S.A.* 2C:35–10a(1); fourth-degree tampering with physical evidence, in violation of *N.J.S.A.* 2C:28–6(1); fourth-degree possession of a police scanner during the commission of a crime, in violation of *N.J.S.A.* 2C:33–22; and fourth-degree resisting arrest, in violation of *N.J.S.A.* 2C:19–2a. Similarly, the authorities charged defendant's brother with drug possession, possession of a police scanner, and eluding police. (We note for completeness that in a pre-trial motion defendant sought unsuccessfully to suppress the items seized from his vehicle. That issue is not before us for review. We note also that the State tried defendant and his brother before the same jury. This appeal involves issues raised by defendant only.)

Defendant's trial lasted two days. At the close of the State's case, the parties disputed whether the Code permitted the State simultaneously to charge defendant with possession and tampering

with evidence when the object of both offenses was the same unit of CDS. The trial court expressed its view that the State had not charged defendant for crimes related to the same substance because there were "two different packages" of cocaine at issue. One package, from which defendant had released the powder, was the size of a fist and the other package, found in defendant's car, was much smaller. The package seized from defendant's car had been marked and entered into evidence as "S–4." Consistent with its view, the trial court proposed the following jury interrogatory: "If you find [defendant] guilty of tampering with physical evidence, was the white powder substance contained in S–4 in evidence?" The court informed counsel that if the jury answered "yes" to that question (*i.e.*, that the possession of, and tampering with, the cocaine originated from the same bag), then the court would dismiss the evidence-tampering charge.

Once the court resolved the special-interrogatory question, the trial continued, and defendant presented his side of the case. After both sides had rested, the trial court instructed the jury in respect of evidence tampering:

> Count three of the Indictment charges defendant, Timothy Mendez, with tampering with physical evidence in violation of New Jersey law, which provides in pertinent part: A person commits a crime, if believing that an official proceeding or investigation is pending or about to be instituted, he alters, destroys, conceals or removes any article, object or other thing of physical substance with the purpose to impair its availability in such proceeding or investigation.

> Before [defendant] can be found guilty of violating this statute, the State must prove each of the following elements beyond a reasonable doubt. First, that [ ] [defendant] believe[d] that an official proceeding or investigation was pending or about to be instituted. Second, that [defendant] altered, destroyed, concealed or removed any article, object or other thing of physical evidence. Specifically, it is alleged that he emptied a package of white powder substance into the air. And, third, that the purpose was to impair its availability in such proceeding or investigation.

> . . . .

> If you find that the State has proven each of these elements beyond a reasonable doubt, then you must find [defendant] guilty on the third count of the Indictment.

> If, on the other hand, you find that the State has failed to prove any or all of these elements beyond a reasonable doubt, then you must find [defendant] not guilty on the third count of the Indictment.

The trial court then reviewed the verdict sheet with the jury. The court directed the jury's attention to the special interrogatory regarding whether the small glassine bag found in defendant's car and the bag that defendant allegedly had held out the car window represented the same specimen of CDS. The court explained:

> [W]e have a supplemental instruction. If you find [defendant] guilty of tampering with physical evidence, go to question 6.... [I]t asks you: If you find [defendant] guilty of tampering with physical evidence, was the white powder substance contained in S-4 in evidence? Was it contained in the little package that you'll have·back there to look at[?] And your answer would either be no or yes.

Defendant did not object to the special interrogatory or to the jury charge as given.

As reflected by the following exchange, the jury interrupted its deliberations to ask the court a question concerning the special interrogatory:

> Court: We have a question that says: Could you please clarify question number 6? Madam Forelady, I'm not really sure what you mean, but let me try to [explain] and then you can tell me if that has answered the jury's question.
>
> For the record, that question reads: If you find [defendant] guilty of tampering ·with physical evidence[,] was the·white powder substance contained in S-4 in evidence? I assume you all know what S-4 in evidence is. That's the item that you've got back in the jury room. All we're asking you in that question is was the white powder substance that was testified to in this matter ever contained in or packaged in S-4? Just a yes or no question. Does that answer your question or not, Madam Forelady?
>
> Juror: I believe it does.
>
> Court: Okay. If not, we'll be right here so you can come back and ask us again. Okay? That's just a yes or no question. As you can see, you just move right on after it.·

Given that second opportunity, defense counsel again did not object to the trial court's charge or to the special interrogatory.

The jury found defendant not guilty of cocaine possession. It found defendant guilty of tampering with physical evidence, of possession of a police radio during the commission of a crime, and of resisting arrest (downgraded to a disorderly person's offense because the jury found that defendant did not use or attempt to use physical force against the troopers). In respect of the special interrogatory, the jury found that the white powder that. defendant had released from the car window did not come from the bag

that the police had retrieved from inside the car. Based on that finding, the trial court concluded that the possession charge and the evidence-tampering charge related to different bags of cocaine. As a result, the court sustained defendant's conviction for tampering with physical evidence.

Defense counsel moved for a new trial, reasserting the argument that the Code precluded the evidence-tampering charge on the facts presented. Counsel also challenged defendant's radio-possession conviction. He argued that because defendant's evidence-tampering charge could not stand, the State lacked a predicate crime on which to sustain the radio-possession charge. After denying that motion, the trial court sentenced defendant to an aggregate term of eighteen months in prison. The Appellate Division affirmed in a reported opinion. *State v. Mendez*, 345 *N.J.Super.* 498, 785 *A.*2d 945 (2001). We granted defendant's petition for certification. 171 *N.J.* 340, 793 *A.*2d 718 (2002).

II.

■ This appeal requires the Court to consider the interplay between two Code provisions, *N.J.S.A.* 2C:35–10 (the possession statute) and *N.J.S.A.* 2C:28–6(1) (the evidence-tampering statute). The possession statute provides, in relevant part:

> It is unlawful for any person, knowingly or purposely, to obtain, or to possess, actually or constructively, a controlled dangerous substance or controlled substance analog, unless the substance was obtained directly, or pursuant to a valid prescription or order form from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by [law].
>
> [*N.J.S.A.* 2C:35–10a.]

The evidence-tampering statute provides, in pertinent part:

> A person commits a crime of the fourth degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:
>
> (1) Alters, destroys, conceals or removes any article, object, record, document or other thing of physical substance with purpose to impair its verity or availability in such proceeding or investigation[.]
>
> [*N.J.S.A.* 2C:28–6.]

In arguing that the State improperly charged him for tampering with the cocaine, defendant relies on *State v. Sharpless*, 314

*N.J.Super.* 440, 715 *A.*2d 333 (App.Div.), *certif. denied,* 157 *N.J.* 542, 724 *A.*2d 802 (1998). The defendant in *Sharpless* was suspected of carrying a handgun. *Id.* at 446, 715 *A.*2d 333. He had both hands in his pockets and stood on a dirt mound when he encountered the police. *Ibid.* As the police approached, the defendant took one hand out of his pocket and began walking away. *Ibid.* The police directed the defendant to take his other hand out of his pocket and to get on the ground. *Ibid.* The defendant initially refused, but after the officers drew their weapons, he obeyed the command. *Ibid.*

The officers conducted a brief patdown search of the defendant in an effort to locate his gun. They found nothing. *Ibid.* Then the police returned to the dirt mound where the defendant had been standing to determine whether he had placed the gun there. *Ibid.* Again, they found no weapon. The police, however, did discover twenty-three decks of heroin in glassine bags. *Id.* at 446–47, 715 *A.*2d 333. The police took the defendant to the police station where they conducted a more thorough search of his person. *Id.* at 447, 715 *A.*2d 333. That search netted another glassine bag of heroin that contained the same markings as the other twenty-three bags found at the scene. *Ibid.*

The State charged the defendant with possession of heroin, possession with intent to distribute, and tampering with physical evidence. *Id.* at 445, 715 *A.*2d 333. The jury convicted the defendant of all charges. *Id.* at 446, 715 *A.*2d 333. Before the Appellate Division, the defendant argued that the trial court erred in not dismissing the evidence-tampering charge. *Id.* at 447, 715 *A.*2d 333. The Appellate Division agreed, explaining:

[W]e conclude that a person who possesses drugs may not be found guilty of tampering with evidence simply because he discards or hides the drugs upon the approach of a police officer. Persons who possess criminal contraband generally seek to keep it hidden from others, especially the police. It is common, for example, for drug dealers to maintain their supply of drugs someplace other than on their persons. It is also common for persons who possess criminal contraband to discard it upon the approach of the police. Consequently, if such conduct were held to constitute tampering with evidence, any person in possession of contraband who took any steps to prevent the police from discovering the contraband could be

charged not only with the possessory offense but also with tampering with evidence. Absent a clearer indication that this was the Legislature's intent in enacting *N.J.S.A.* 2C:28–6, we decline to reach this conclusion.

[*Id.* at 459, 715 *A.*2d 333.]

In making that determination, the *Sharpless* court relied on an earlier Appellate Division decision, *State v. Fuqua,* 303 *N.J.Super.* 40, 696 *A.*2d 44 (1997). In *Fuqua,* the defendant had parked his vehicle in a public park. *Id.* at 42, 696 *A.*2d 44. The police became suspicious because of the hour of day at which they spotted the vehicle. (It was approximately 9:00 p.m. in December.) *Ibid.* The police drove up to the car, exited their vehicle, and then walked toward the defendant. *Ibid.* The defendant drove away quickly. *Id.* at 43, 696 *A.*2d 44. The defendant later testified that he did not know it was the police who were approaching him and that he thought that he was about to be robbed. *Id.* at 42–43, 696 *A.*2d 44.

A chase ensued. *Ibid.* Although the police initially were unsuccessful in apprehending the defendant, they did locate his abandoned car and found some marijuana. *Ibid.* The police eventually apprehended the defendant and searched his person, finding a packet of cocaine hidden in one of the defendant's socks. *Ibid.* The authorities charged the defendant with drug possession and hindering apprehension. *Id.* at 42, 696 *A.*2d 44. Under *N.J.S.A.* 2C:29–3b (the hindering statute), "[a] person commits an offense if, with purpose to hinder his own [ ] apprehension, ... he: ... [s]uppresses, by way of concealment or destruction, any evidence of the crime ... which might aid in his discovery or apprehension or in the lodging of a charge against him[.]"

Before the Appellate Division, the defendant argued that the hindering statute violated his right against self-incrimination. *Fuqua, supra,* 303 *N.J.Super.* at 45, 696 *A.*2d 44. The Appellate Division agreed, reasoning:

Insofar as this subsection [*N.J.S.A.* 2C:29–3b(1)] relates to the concealment or destruction of evidence of a person's completed crime, such as tampering with a crime scene, disposing of a murder weapon or the like, the statute would have applicability. Where, however, the crime is an ongoing possessory offense, such as

defendant's possession of the cocaine in this case, we question the application of this statute.

. . . .

> We therefore construe the language of this subsection to apply to evidence of crimes other than ongoing possessory crimes where the possession of the items or substance at that time is chargeable as a separate offense. The statute, where it speaks of concealment of "evidence of the crime" with the purpose of hindering the actor's apprehension, *N.J.S.A.* 2C:29-3b(1), is sensibly construed to refer to evidence of a completed criminal act, not a current possessory crime. Any other construction would implicate the constitutional prohibition against self-incrimination.

[*Id.* at 46-47, 696 *A.2d* 44.]

*Sharpless* and *Fuqua*, although correctly decided by the Appellate Division, are distinguishable from this case and consistent with our disposition. In *Sharpless,* the defendant had abandoned the CDS intact, whereas in this case the State accused defendant of destroying completely the evidence contained in the fist-sized bag. Stated differently, the defendant in *Sharpless* had taken steps to rid himself of the CDS but did not succeed in that effort in that the police later recovered the evidence and traced it back to the accused. Under those circumstances, the conduct in *Sharpless* served as a functional equivalent of an unsuccessful *attempt* to tamper with physical evidence.

■ In that respect, the textual differences between the evidence-tampering statute and an analogous statute, *N.J.S.A.* 2C:28-5 (the witness-tampering statute), are instructive. There is no explicit language in the evidence-tampering statute regarding a person's "attempt" at tampering with physical evidence. In contrast, the witness-tampering statute explicitly includes within its purview a person who "knowingly attempts to induce or otherwise cause[s] a witness or informant" to testify falsely or to engage in the other conduct proscribed under *N.J.S.A.* 2C:28-5a(1)-(4). We discern good reason for those differences. Evidence that is hidden or discarded but later found by the police is still of undiminished value to law enforcement authorities. The mere attempt at witness tampering, however, has an immediate and significant capacity to undermine the integrity of the criminal justice system. We, therefore, interpret *Sharpless* as holding that

the crime of tampering with evidence of a possessory crime includes as a necessary element the permanent alteration, loss, or destruction of the evidence itself.

Similar to what occurred in *Sharpless*, in *Fuqua* the defendant had not destroyed the drugs but rather had hidden them in his sock, which the court in that case concluded was part of an ongoing possessory offense. In that regard, our courts have defined possession to be "the exercise of dominion and control over the item in question," *State v. Jackson*, 326 *N.J.Super.* 276, 280, 741 *A*.2d 128 (App.Div.1999), accompanied by knowledge of the existence and character of the item. *State v. Brown*, 80 *N.J.* 587, 597, 404 *A*.2d 1111 (1979). Possession need not be exclusive; two or more persons jointly may possess the same object. *State v. McCoy*, 116 *N.J.* 293, 299–300, 561 *A*.2d 582 (1989). The State is not required to establish physical control of an item so long as the accused intended to exercise control over it. *Brown, supra*, 80 *N.J.* at 597, 404 *A*.2d 1111.

■ In contrast, a person who possesses and then destroys cocaine has not merely abandoned or concealed that evidence within the framework of *Sharpless*. Nor does that person remain in possession of cocaine within the framework of *Fuqua* or under the case law just cited. Rather, that person has completed a possessory offense and has taken a new step in completing a separate offense involving destruction of physical evidence. Thus, the act of preventing an intact retrieval of the CDS completes the chargeable offense under the evidence-tampering statute. We find nothing in the Code's text or in its legislative history to warrant a contrary conclusion. As suggested earlier, unlike one who conceals or discards cocaine later retrieved by the police, the person who destroys such evidence after possessing it forecloses forever its recovery and introduction at trial. That the Legislature would intend to expose the accused in those circumstances to separate criminal liability under the evidence-tampering statute appears entirely sensible to the Court.

We adopted the Appellate Division's similar reasoning in *State v. Ruiz*, 127 *N.J.Super.* 350, 317 *A.*2d 403 (App.Div.1974), *aff'd*, 68 *N.J.* 54, 342 *A.*2d 833 (1975). In *Ruiz*, the defendant was charged with both possession with intent to distribute and unlawful distribution of CDS. *Id.* at 354, 317 *A.*2d 403. The defendant negotiated a sale of narcotics with an undercover police officer. *Id.* at 356, 317 *A.*2d 403. After negotiating a price, the defendant took the police officer's money, left the scene, and returned in approximately one minute with a bag that contained heroin. *Ibid.* The defendant immediately handed the bag to the officer and later was arrested. *Ibid.*

Before the Appellate Division, the defendant contended that, because he had possessed the bag only with the intent to sell it moments later, the court should treat the possessory offense as an integral and inseparable part of the distribution offense. *Ibid.* The Appellate Division rejected that argument, noting that subsequent distribution of an illegally-possessed controlled substance "encompasses an added element and brings into being a new and separate offense." *Id.* at 358, 317 *A.*2d 403. The panel also noted that the defendant had control over the heroin although it was not on his person when he arranged the transaction with the undercover officer. *Id.* at 359 n. 2, 317 *A.*2d 403.

This Court affirmed, stating that "here [ ] we are dealing with demonstrably distinguishable criminal offenses." *State v. Ruiz*, 68 *N.J.* 54, 58, 342 *A.*2d 833 (1975). We explained that each charge required different proof and represented a different stage in an overall drug-trafficking scheme. *Ibid.* We essentially adopted the reasoning of the Appellate Division that "[e]ach activity is a separate evil that the Legislature determined to combat." *Ruiz*, *supra*, 127 *N.J.Super.* at 356, 317 *A.*2d 403. Consistent with that rationale, we are satisfied that the Code does not preclude the State from charging a person with both possession of and tampering with all or part of the same unit of CDS destroyed by the accused.

 We emphasize that our disposition is not to be understood as lessening the State's burden of proof attendant in these circumstances. The State must prove each of the elements under the possession and evidence-tampering statutes beyond a reasonable doubt. In respect of the possessory offense, the State's burden in proving the illicit nature of a substance completely destroyed by an accused may be difficult indeed. A similar difficulty, however, does not exist under the evidence-tampering statute. That statute does not require the State to prove that the object was a controlled dangerous substance, only that it was an "article, object, record, document or other thing of physical substance[,]" in addition to the other elements enumerated under *N.J.S.A.* 2C:28–6. That said, our focus here is solely on whether the Code precludes a simultaneous charge under the possession and evidence-tampering statutes when an accused allegedly has destroyed all or part of the evidence. For the reasons already stated, we conclude that it does not.

### III.

 Defendant also argues that he is entitled to a new trial based on errors in the jury instruction. He contends that the special jury interrogatory was flawed because it did not instruct the jurors to be convinced of their determination regarding the source of the tampered evidence beyond a reasonable doubt. We disagree. First, in view of our analysis in respect of the State's ability to charge defendant under both the possession and evidence-tampering statutes, the source of the cocaine was immaterial. Second, as to the required elements of the tampering statute, the trial court clearly instructed jurors that they had to be convinced of the State's proofs beyond a reasonable doubt.

Moreover, as already noted, defendant twice declined to object to the instruction at trial. Under the plain-error standard, any flaw in the jury charge relating to the special interrogatory was harmless. See *State v. Robinson,* 165 *N.J.* 32, 47, 754 *A.*2d 1153 (2000) (upholding challenged portion of jury charge under plain-

error standard). Lastly, we agree with the Appellate Division that defendant's conviction under the evidence-tampering statute renders moot his remaining argument that his conviction for possession of a police scanner during the commission of a crime lacked a predicate offense. *Mendez, supra,* 345 *N.J.Super.* at 514, 785 *A.*2d 945.

## IV.

The judgment of the Appellate Division is affirmed.

*For affirming*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and Judge PRESSLER, temporarily assigned—7.

*Opposed*—None.