832 A.2d 303

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. MANUEL PEREZ, DEFENDANT–RESPONDENT.

Argued April 28, 2003—Decided July 22, 2003.

*Steven E. Braun,* Assistant Prosecutor, argued the cause for appellant (*James F. Avigliano,* Passaic County Prosecutor, attorney; *Gary H. Schlyen,* Assistant Prosecutor, of counsel and on the brief).

*James H. Maynard* argued the cause for respondent (*Maynard & Truland,* attorneys; *Mr. Maynard* and *Joseph S. Szary* on the briefs).

*Kristen M. Harberg,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Peter C. Harvey,* Acting Attorney General, attorney).

*Michael J. Sullivan* argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (*McElroy, Deutsch & Mulvaney,* attorneys).

The opinion of the Court was delivered by

VERNIERO, J.

We are called on to evaluate the sufficiency of the State's evidence in respect of defendant's convictions for child luring and attempted child endangerment. Both offenses stemmed from two encounters with the same thirteen-year-old victim. The Appellate Division set aside the jury's guilty verdict, concluding that the evidence presented against defendant was insufficient as a matter of law. We disagree and reverse.

## I.

We derive our summary of facts largely from evidence adduced at trial. At the time of the two incidents, D.D. was a thirteen-year-old student in the seventh grade of middle school, and she lived with her parents in a municipality in Passaic County. Defendant, who was thirty-four-years old when the encounters occurred, resided about three blocks from D.D. The child testified that she had seen defendant in the neighborhood on three prior occasions, but that before the first incident they never had talked.

That incident took place on a rainy morning in February 1999 when D.D. was walking alone to school. She had neither an umbrella nor other rain gear, and was carrying a backpack. D.D.'s most direct path to school led her past defendant's house. Defendant, driving a few blocks from his home and about one block from the school, pulled beside D.D. on the street and offered her a ride. She declined. He offered again, and she again said no. Defendant then drove away. D.D. told her father what had happened but he did not contact the police, believing it to be an isolated incident.

The second encounter occurred in May 1999, at about 9:00 p.m., when D.D. and her younger brothers, F.D. and K.D., were playing on a neighborhood street. D.D. was riding a mountain bike while her brothers were roller-blading. Defendant drove past them traveling in the same direction, and stopped his car. When D.D. was about even with the car's back seat, defendant turned while remaining in the car and asked her, "do you remember me?" She

ignored him. He called out to her again, asking her to come over, motioning with his hand. F.D. asked "what?" to which defendant replied, "not you, her." (There is some inconsistency among the siblings' testimony about the order of defendant's statements and about how many times he called out to D.D.) Eventually, D.D. turned around and led her brothers in the opposite direction, towards their home. Defendant drove off without further contact with the children.

After D.D. had informed her father of the second incident, he called the police. A municipal police officer interviewed D.D., who described her two encounters with defendant and directed the officer to defendant's house. The child then identified defendant's car.

The officer transported defendant to police headquarters and informed him of his rights as required by *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966). After waiving those rights, defendant made a formal statement. He volunteered that on prior occasions he had seen D.D. walking to school or pushing a baby carriage. Defendant stated:

I see this girl all the time, all the time. I've only spoken to her twice during the winter and today. Sometimes on weekends or after school hours she's with friends, and tonight I saw her on the bicycle. I know she's younger than me, but I didn't know she's a minor. She's cute, she's nice, but her looks are deceiving. I thought she's a teenager, about 16. Also her height, she's a pretty tall girl.

". . . .

·I don't want to give up anything like my marriage, but what impressed me about her is her looks, she's attractive and her height. I don't know much about her.

. . . .

[On a prior occasion] [s]he was sitting on her front porch and I saw her talking to two young guys. I just drove by and we made eye contact and I just smiled at her. I was surprised that she lived there, I didn't know. I wasn't jealous of them, they were in her age bracket, I guess I'm trying to take advantage of how I look now while I can. I am obsessed with her, but not like anything out of the ordinary. I find her attractive and there are plenty of young ladies that go by that way and sometimes I get to talk to them. Sometimes girls going to school or joggers. I don't usually fantasize about her, but sometimes if it come[s] to me mentally.

> Mentally I've thought of asking her for a date, but actually no, it's hard to come on to a lady straight. You have to play the game. I wish I could ask her out, but physically it is hard.
>
> . . . .
>
> Yes, I said come over here [at the second encounter]. She didn't come over, she made a U-turn with the two boys and went up [the] Avenue. I just smiled and continued on my way. I wanted to talk to her because she was across the street, and I wanted to tell her that if she remembers me and that I was the guy that lives over on the corner of [the street]. I just wanted to see her up close and hear her voice and what she's like.

Defendant also admitted that the first incident had occurred as D.D. described it to the police.

A grand jury charged defendant with fourth-degree stalking in violation of *N.J.S.A.* 2C:12–10b (count one); third-degree child luring, in violation of *N.J.S.A.* 2C:13–6 (count two); and third-degree attempting to endanger the welfare of a child, in violation of *N.J.S.A.* 2C:5–1 and 2C:24–4a (count three). At trial, the State sought to prove that defendant had attempted to lure D.D. into his car to engage in some form of prohibited sexual conduct. The prosecution presented testimony from D.D., her two brothers, her father, and from the police officer who had taken defendant's statement at police headquarters. The officer read much of that statement to the jury.

After the State had rested, defendant moved under *Rule* 3:18–1 for a judgment of acquittal, arguing that there was insufficient evidence to warrant a conviction. The court granted defendant's motion in respect of the stalking charge (a determination that the State does not contest). The court, however, allowed the other two charges to proceed to the jury, reasoning:

> The evidence does not indicate that either in February of 1999 or in May of 1999, that the conversation dealt with sex.
>
> In fact D.D. herself testified that there was nothing sexual. The defendant did not do anything that, under the circumstances—did not follow her, did not offer to take her anywhere, did not show her anything; did not ask her any other questions and did not mention he liked her or thought she was pretty or attractive and this would be [applicable] to both February of 1999 and May of 1999.
>
> What moves it in the direction of sex is the statement of the defendant.

. . . .

It's very close in my judgment as to whether or not both Counts 2 and 3 should be dismissed. It's a close question I believe, but as I indicated the standard is that the State does not have to exclude every reasonable hypothesis except that of guilt, and I think when you consider the totality of the circumstances in giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, I think ... a reasonable jury could conclude that the defendant is guilty beyond a reasonable doubt, that is to say, I think the jury can conclude that it was the defendant's conscious object both as to Count 2 and as to Count 3 to engage in a sexual act with this person which would be a prohibited offense or a criminal offense or sexual contact given her age being 13.

. . . .

Now it might be that he just wanted to ask her for a date, but, on the other hand, it might have been that he wanted to get her into the car to commit some type of sexual act with her.

Now, you don't get it from what he said to her, but arguably you get it from the fascination that he had with her in terms of his statement to the police, and I realize it's somewhat of a stretch, but I really think it's a question that the jury should decide.

The jury found defendant guilty of both remaining charges. The court sentenced defendant to an aggregate three-year probationary term conditioned on lifetime community supervision, and assessed the usual monetary penalties and fines. The Appellate Division reversed in a reported decision. *State v. Perez,* 349 *N.J.Super.* 145, 793 *A.*2d 89 (2002). The panel concluded "that there was no reasonable basis upon which the jury might have convicted defendant for child luring and attempted child endangerment." *Id.* at 151, 793 *A.*2d 89. We granted the State's petition for certification, 174 *N.J.* 40, 803 *A.*2d 636 (2002), and granted *amicus curiae* status to the Attorney General and to the Association of Criminal Defense Lawyers of New Jersey (Association).

## II.

### A.

The Legislature enacted New Jersey's child-luring statute to "close a gap between criminal charges of attempted kidnapping

and the lesser offense of harassment for those instances in which a person unsuccessfully tries to lure a child into a motor vehicle with a criminal purpose." *Sponsor Statement to Senate, No. 1524* (Feb. 1, 1993). The act is intended to "criminalize the early stages of what may develop into kidnapping or a sex offense." John M. Cannel, *The New Jersey Criminal Code Annotated*, comment 1 on *N.J.S.A.* 2C:13-6 (2000). Consistent with that purpose, the statute provides, in relevant part:

> A person commits a crime of the third degree if he attempts ... to lure or entice a child or one who he reasonably believes to be a child into a motor vehicle, structure or isolated area, or to meet or appear at any other place, with a purpose to commit a criminal offense with or against the child.
>
> "Child" as used in this act means a person less than 18 years old.
>
> [*N.J.S.A.* 2C:13-6.]

As originally drafted, the statute provided that attempting to lure or entice a child into an automobile created a "rebuttable presumption" that the person has acted with a criminal purpose. *Senate, No. 1524 (3rd reprint)* (Feb. 1, 1993); Assembly Judiciary, Law and Public Safety Committee, *Statement to Senate, No. 1524* (June 3, 1993). The Legislature, however, deleted that language as recommended by Governor Florio in his conditional veto of the bill. See *Governor's Veto Message to Senate, No. 1524* (Aug. 16, 1993) (recommending deletion of language that created rebuttable presumption of criminal purpose when accused lacked legal responsibility for child). In that same conditional veto, the Governor requested that the Legislature increase the offense's classification from a fourth-degree crime to a third-degree crime. *Ibid.*

Aside from his proposed changes, Governor Florio expressed his agreement with the bill. He stated:

> I want to commend the sponsors of this bill for proposing legislation that will fill a significant gap in our current law. Under current law, it is nearly impossible to prosecute individuals who attempt to abduct children into their cars until after it is too late—that is, until the criminal has succeeded in taking control of the child, and thereby inflicting serious psychological, and sometimes even physical harm on the victim.
>
> [*Ibid.*]

After the Legislature had accepted his conditions, the Governor signed the measure into law in December 1993.

### B.

The Legislature intended the child-endangerment statute to criminalize a broad array of sexual activity involving children. Assembly Judiciary, Law, Public Safety and Defense Committee, *Statement to Assembly, No. 3279* (June 28, 1979). Lawmakers amended the statute in 1992 to increase the punishment it imposed. *L.* 1992, *c.* 6. Specifically, they increased from a fourth-degree offense to a third-degree offense the crime of child endangerment if committed by a person with no legal duty to care for the child. The statute now provides, in relevant part:

a. Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child, or who causes the child harm that would make the child an abused or neglected child ... is guilty of a crime of the second degree. Any other person who engages in conduct or who causes harm as described in this subsection to a child under the age of 16 is guilty of a crime of the third degree.

b. (1) As used in this subsection: "Child" means any child under 16 years of age. [*N.J.S.A.* 2C:24-4.]

### C.

When evaluating motions to acquit based on insufficient evidence, courts must view the totality of evidence, be it direct or circumstantial, in a light most favorable to the State. More specifically, we must give the government in this setting "the benefit of all its favorable testimony as well as of the favorable inferences [that] reasonably could be drawn therefrom[.]" *State v. Reyes,* 50 *N.J.* 454, 459, 236 *A.*2d 385 (1967). Within that framework, the applicable standard is whether such evidence would enable a reasonable jury to find that the accused is guilty beyond a reasonable doubt of the crime or crimes charged. *Ibid.* Providing the State with all reasonable inferences does not, however, lessen "the State's burden of establishing the essential elements of

the offense [or offenses] charged beyond a reasonable doubt." *State v. Martinez*, 97 *N.J.* 567, 572, 483 *A.*2d 117 (1984).

### III.

#### A.

We first address defendant's child-luring conviction. As reflected in the statute cited above, when prosecuting an accused for child luring, the State generally must prove beyond a reasonable doubt each of the following elements: (1) that the accused attempted to lure or entice into a motor vehicle, structure, or isolated area, (2) a child under the age of eighteen, (3) with a purpose to commit a criminal offense with or against that child. *N.J.S.A.* 2C:13–6; *Perez, supra,* 349 *N.J.Super.* at 152, 793 *A.*2d 89. Within that context, a criminal offense is "[a]n offense . . . for which a sentence of imprisonment in excess of 6 months is authorized[.]" *N.J.S.A.* 2C:1–4a; *Perez, supra,* 349 *N.J.Super.* at 152, 793 *A.*2d 89.

 Given the statute's third element, we understand why the court below stated that child luring is "inchoate in nature, involving conduct designed to culminate in the commission of a substantive offense but that has not yet achieved its completion because something remains to be done by the actor." *Perez, supra,* 349 *N.J.Super.* at 151, 793 *A.*2d 89. We disagree with that characterization, however, in view of the statute's legislative history. As the Attorney General properly notes in his brief, "the harm sought to be proscribed is the act of endeavoring, or trying, to get a child into one's car, and not the act of successfully getting the child into the car." A defendant's simple *attempt* to lure or entice a child into the prohibited space is the only act required under the statute.

The child-luring statute is similar in that regard to the eluding statute. That latter statute criminalizes the "*attempt* [ ] to elude any police or law enforcement officer," assuming other elements are satisfied. *N.J.S.A.* 2C:29–2b (emphasis added). Given that

wording and the overall structure of the Code of Criminal Justice (Code), the Appellate Division correctly has concluded that "[e]luding does not involve an attempt to commit any other substantive offense." *State v. Mendez*, 345 *N.J.Super.* 498, 506, 785 *A.*2d 945 (2001), *aff'd*, 175 *N.J.* 201, 814 *A.*2d 1043 (2002).

The same is true of New Jersey's witness-tampering statute, *N.J.S.A.* 2C:28–5. That statute "explicitly includes within its purview a person who 'knowingly attempts to induce or otherwise cause[s] a witness or informant' to testify falsely or to engage in the other conduct proscribed under *N.J.S.A.* 2C:28–5a(1)–(4)." *Mendez, supra*, 175 *N.J.* at 211, 814 *A.*2d 1043. It reflects that "[t]he mere attempt at witness tampering … has an immediate and significant capacity to undermine the integrity of the criminal justice system." *Ibid.* Accordingly, the witness-tampering statute prohibits that specific activity and is not intended to punish an attempt to complete another substantive crime.

We thus subscribe to the Attorney General's construction that

> like eluding and witness tampering, child luring does not involve an attempt to commit some other substantive offense. Instead, the criminal act of child luring is complete when a person attempts or "tries" to lure or entice a child into a motor vehicle with criminal purpose. The material elements of child luring include a forbidden conduct element (attempting or trying to lure or entice a child into a motor vehicle), as well as a mental element (having a purpose to commit a crime with or against a child), but does not include a result because there is no required result.

With those concepts in mind, we turn to whether the record contains sufficient evidence to permit a reasonable jury to find that the State had satisfied each of the three elements of the child-luring statute beyond a reasonable doubt. While seated in his automobile, defendant twice initiated contact with D.D. In February 1999, defendant asked D.D. whether she wanted to ride with him to school. That constituted a direct invitation to enter the car. When the child initially declined, defendant repeated his offer. In May 1999, defendant called out to D.D., singling her out among a group of three children and motioning to her. A

reasonable jury could have construed the totality of those facts as defendant's endeavoring, or trying, to get D.D. into his car in satisfaction of the statute's first element.

In respect of the next element, the parties do not dispute that D.D. was under the age of eighteen when her two encounters with defendant had occurred. Defendant confirmed that fact by stating that D.D. was "about 16." There is no question, then, that the record contains sufficient evidence of D.D.'s age for purposes of sustaining that element of the State's case against defendant's acquittal motion.

The last element, whether defendant acted with the purpose to commit a criminal offense with or against D.D., is not as easy to discern. We have observed previously that "the nature of the crime, luring, makes it difficult to infer a criminal intent." *State v. Covell,* 157 *N.J.* 554, 571, 725 *A.*2d 675 (1999). The State argues that defendant's statement to the police adequately permits an inference that defendant intended to commit a prohibited sexual offense punishable by a term of imprisonment in excess of six months. In contrast, defendant argues that the Appellate Division properly vacated the judgment of conviction on the ground that the State failed to offer evidence that proved that he had approached D.D. with an illegal sexual purpose.

The State is correct. The jury considered evidence that defendant, a thirty-four-year-old individual, was fascinated and, in his word, "obsessed" with the thirteen-year-old D.D. Moreover, defendant's statement strongly suggests that those feelings were based solely on his physical attraction to the child. He also expressed concerns about jeopardizing his marriage in view of that attraction. He wanted to ask D.D. for a "date," but found it difficult to "come on to a lady straight." Defendant further explained that "[y]ou have to play the game," that he had "fantasize[d]" about D.D., and that he had "tr[ied] to take advantage" of his apparent youthful appearance.

The jury was entitled to apply its common sense and experience in evaluating the meaning of defendant's statements. In so doing, it could draw reasonable inferences to conclude that defendant's purpose in attempting to lure D.D. into his car was to engage in sexual conduct. See *Covell, supra,* 157 *N.J.* at 562, 566–67, 725 *A.*2d 675 (observing, in child-luring case, that defendant's statement that he had "this thing with young girls that I can't help" bore on intent to commit sexual crime against child). Although we agree with the trial court that this is a close case, we are satisfied that the court did not err in allowing the child-luring charge to proceed to the jury.

## B.

The child-endangerment statute "prohibits impairing or debauching the morals of a child by sexual conduct. Although the term 'sexual conduct' is not defined, clearly included are sexual assaults and sexual contact[.]" *Perez, supra,* 349 *N.J.Super.* at 153, 793 *A.*2d 89. The statute distinguishes between second-degree and third-degree offenders depending on the legal relationship between the offender and victim. Because defendant had no legal duty to care for D.D., the State properly considered him a third-degree offender. *N.J.S.A.* 2C:24–4a. There also is an age requirement. The statute requires that the child at issue be "under the age of 16[.]" *Ibid.*

Unlike the child-luring statute, attempted child endangerment must be evaluated in accordance with the Code's criminal-attempt statute. That latter statute requires proof of a defendant's criminal purpose, as well as evidence that he or she had taken a "substantial step" toward the commission of an object crime. *N.J.S.A.* 2C:5–1a(3). Within that framework, a substantial step is conduct by an accused that strongly corroborates his or her alleged criminal purpose. *State v. Fornino,* 223 *N.J.Super.* 531, 538, 539 *A.*2d 301 (App.Div.), *certif. denied,* 111 *N.J.* 570, 546 *A.*2d 499, *cert. denied,* 488 *U.S.* 859, 109 *S.Ct.* 152, 102 *L.Ed.*2d 123

(1988); at *Cannel, supra, New Jersey Criminal Code Annotated,* comment 6 on *N.J.S.A.* 2C:5–1.

In addressing those tenets, the State mirrors its prior arguments. It contends that there is adequate evidence to support a jury finding that defendant had possessed the requisite mental state and that he had taken a sufficient step toward committing an act of child endangerment. Defendant conversely asserts that the Appellate Division did not err in concluding that the record lacked the requisite proofs as a matter of law. He contends "that the neutral circumstances of the encounters, and the lack of any definitive act or statement that indicates criminal intent, strongly suggest[ ] the conclusion that [he] had no criminal intent toward D.D."

We again are constrained to agree with the State given the standard of review attendant in these circumstances. Informed by our analysis in respect of defendant's child-luring conviction, we are satisfied that a reasonable jury could have discerned defendant's criminal purpose within the meaning of attempted child endangerment based on the totality of his admissions. Specifically, those admissions permitted jurors to infer that defendant intended to act on his expressed obsession with D.D. by attempting to engage in prohibited sexual conduct. As the community's representatives, jurors were permitted to use common experience to interpret defendant's words to determine his intent, which presumably they did.

Similarly, just as it could have inferred defendant's sexual intentions from his statement, the jury could have concluded that his actions constituted a substantial step toward realizing those intentions. In that sense, there is an especially close link between the criminal-purpose and substantial-step requirements. Stated differently, we consider defendant's words and acts in tandem as part of the whole picture from which the jury could have drawn its inferences. The State provided enough evidence for the jury to conclude that defendant's attempts at luring or enticing D.D. into his car constituted a substantial step that strongly corroborated

his alleged criminal purpose. We therefore are persuaded that prosecutors presented sufficient proof of defendant's actions and purpose to withstand an acquittal motion in respect of those elements.

That brings us to the remaining question whether the State presented sufficient proofs concerning the statute's age requirement. The child-endangerment statute is codified under chapter 24 of the Code, whereas other sexual offenses are found under chapter 14. Given the statute's text and the Code's overall structure, we conclude that the Legislature intended the chapter 14 standard in respect of a victim's age to apply here. The import of that conclusion is that the child-endangerment statute requires only objective proof that the alleged victim was a child under the age of sixteen, not that the accused knew or reasonably should have known that fact. See *N.J.S.A.* 2C:14–5c (providing that defendant cannot assert as defense mistaken belief that his or her victim was "above the age stated for the offense"). Under that standard, the State sufficiently proved the age of the victim, irrespective of defendant's statement that D.D.'s "looks [were] deceiving" and that he believed that she was "about 16."

For completeness, we note that defendant also moved pursuant to *Rule* 3:20–1 for a new trial after the jury had rendered its verdict. The trial court denied that motion. "The trial court's ruling on such a motion shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." *R.* 2:10–1. Given our conclusion that defendant was not entitled to an acquittal at the close of the State's case under the applicable standards of review, we find no manifest denial of justice in the trial court's refusal to set aside the jury's verdict. The trial court did not err in denying defendant's acquittal motion pursuant to *Rule* 3:18–1 and in denying his similar *Rule* 3:20–1 motion for a new trial.

Our disagreement with our concurring and dissenting colleague is quite narrow. Our colleague agrees with our conclusion in respect of defendant's child-luring conviction. That agreement

includes our determination that the State presented sufficient evidence to support its claim that defendant attempted to lure D.D. into his car with a criminal purpose, namely, to engage in some form of prohibited sexual conduct. It is the criminal-purpose element of defendant's child-luring conviction that, in our view, presents a "close" case, not the act requirement. Therefore, our conclusion regarding that conviction is consistent with our conclusion in respect of attempted child endangerment, even though the latter requires proof that defendant had taken a substantial step toward endangering D.D.

Lastly, we are mindful of defendant's and the Association's implicit concern that overzealous prosecutions, particularly those conducted in the name of child safety, can become tantamount to criminalizing a person's mere thoughts or fantasies. That danger, however, did not materialize in this case because defendant not only expressed his clear obsession with D.D., but also attempted to act on it. As such, his conduct strikes us as being the very conduct that the Legislature intended to prevent when it enacted the child-protection statutes at issue in this appeal. Although not strong, the State's proofs minimally were sufficient for a reasonable jury to find that prosecutors had proved all elements of defendant's alleged crimes beyond a reasonable doubt. Under that test, we hold that the jury's verdict must stand.

## IV.

We reverse the judgment of the Appellate Division, and reinstate the trial court's judgment of conviction.

ZAZZALI, J., concurring in part and dissenting in part.

I agree with the conclusion set forth in the majority's persuasive opinion that the evidence presented by the State supports defendant's conviction for child luring. *N.J.S.A.* 2C:13-6. I respectfully disagree, however, that the same evidence supports his conviction for attempted child endangering. *N.J.S.A.* 2C:5-1; *N.J.S.A.* 2C:24-4a. To convict defendant of that offense, the State must

prove beyond a reasonable doubt that he took a "substantial step" towards commission of the object crime of child endangering. *Ante*, at 553, 832 A.2d at 311 (citing *N.J.S.A.* 2C:5–1a(3)). Because I believe that the evidence presented in this case does not support such a finding, I dissent from that portion of the majority's opinion.

A substantial step is conduct "strongly corroborative of the actor's criminal purpose." *N.J.S.A.* 2C:5–1b. Attempt crimes require that the actor take a substantial step towards the commission of an object offense to ensure that "very remote prepatory acts" remain excluded from the ambit of criminal liability. *New Jersey Penal Code, Volume II: Commentary, Final Report of the New Jersey Criminal Law Revision Commission* at 117–18. The substantial step requirement reflects the Legislature's policy judgment that an individual should not be subject to criminal prosecution and punishment for a criminal attempt unless he or she firmly has advanced toward some criminal objective. *Ibid.* It balances a fundamental concern for the liberty of our citizens with the State's general interest in criminal deterrence. *Ibid.*

In this case, the State alleges that defendant attempted to commit the underlying crime of child endangering. *N.J.S.A.* 2C:24–4a (requiring defendant to engage in "sexual conduct which would impair or debauch the morals of [a] child"). Although a jury reasonably might have inferred from defendant's statements to police that he desired sexual conduct with D.D., the State failed to offer sufficient evidence that defendant took a substantial step toward that end. The record establishes that defendant offered D.D. a ride to school on a rainy February day. D.D. declined defendant's offer and defendant drove away. On a second occasion, three months later, defendant saw D.D. playing on a public street with her younger brothers, stopped, and motioned for D.D. to come over to his car. When D.D. ignored defendant, he again drove away. Those two incidents comprised defendant's entire course of conduct toward D.D.

As noted, to support a conviction for attempted child endangerment, defendant's actions must be "strongly corroborative" of a desire to engage in sexual conduct with D.D. *N.J.S.A.* 2C:5–1b. If defendant's conviction for child luring, which does not require that a defendant take a substantial step, presents a "close case," *ante* at 552–53, 832 A.2d at 310–11, his conviction for attempted child endangering, which does require a substantial step, should fall. On the thin facts of this appeal, a jury reasonably could not have concluded that defendant's actions were "strongly corroborative" of an underlying criminal intent.

I therefore would vacate defendant's attempted child endangering conviction for failure to present sufficient evidence of a substantial step in accordance with the reasons expressed by Judge Parrillo on that issue. *State v. Perez,* 349 *N.J.Super.* 145, 155–57, 793 *A.*2d 89 (App.Div.2002).

For reversal and reinstatement—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA and ALBIN—6.

For concurring in part; dissenting in part—Justice ZAZZALI—1.