# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2046-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JULIO C. MEJIA,

    Defendant-Appellant.

_____

Submitted November 18, 2025 – Decided January 29, 2026

Before Judges Gilson and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 21-03-0083.

John L. Weichsel, attorney for appellant.

Matthew J. Platkin, Attorney General, attorney for respondent (Debra G. Simms, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

A jury convicted defendant Julio Mejia of four crimes related to his sexual assault of a fifteen-year-old girl: second-degree sexual assault of a victim who

is at least thirteen years of age but less than sixteen years of age by a person who was at least four years older, N.J.S.A. 2C:14-2(c)(4); fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1); and second-degree luring or enticing a child, N.J.S.A. 2C:13-6(a). Defendant was sentenced to an aggregate prison term of seven years.

Defendant appeals, making one argument: the State failed to present sufficient evidence of the victim's age and, therefore, did not establish a necessary element of each of the four offenses. We reject this argument because at trial the victim told the jury her date of birth and testified that she was fifteen years old when she engaged in sexual intercourse with defendant. Accordingly, we affirm defendant's convictions and sentence.

I.

We summarize the facts from the record, including the evidence at trial. Both the victim, M.N. (Mary), and defendant testified at trial.[1]

---

[1] We use initials and a fictitious name to protect the privacy interests of a victim of child sexual abuse. See R. 1:38-3(c)(9).

On August 30, 2019, Mary and a friend were spending time at a Barnes & Noble in Woodland Park. Mary's stepfather could not pick them up, so one of Mary's adult brothers arranged a Lyft ride to bring them home.

Defendant, who drove for Lyft, picked the girls up around 8:00 p.m. He first drove Mary's friend home and then drove Mary to her home in Prospect Park. Approximately three months later, Mary told a school therapist that she had sexual intercourse with defendant on more than one occasion.

The police were notified, and Detective Sergeant Walter Richmond of the Prospect Park Police Department investigated the matter. Detective Richmond interviewed Mary, and she told him she was born in December 2003, and therefore she was fifteen years old in August and September 2019. Mary then disclosed that she had had sexual intercourse with defendant on August 30, 2019 and September 21, 2019. Mary provided the detective with access to text messages she had exchanged with defendant between August 31, 2019 and September 24, 2019.

Detective Richmond also subpoenaed records from Lyft and confirmed that defendant was the Lyft driver who picked up Mary on August 30, 2019. The detective also learned that defendant's date of birth was February 21, 1980. Therefore, in August and September 2019, defendant was thirty-nine years old.

3

Based on the evidence gathered by the police, a grand jury indicted defendant for six crimes: second-degree sexual assault of a child on August 30, 2019 (count one); second-degree sexual assault of a child on September 21, 2019 (count two); fourth-degree criminal sexual contact on August 30, 2019 (count three); fourth-degree criminal sexual contact on September 21, 2019 (count four); third-degree endangering the welfare of a child (count five); and second-degree luring or enticing a child (count six).

The jury trial was conducted in September 2023. Mary testified that she was born in December 2003,[2] and that she was fifteen years old in August and September 2019.

Mary explained that defendant was a Lyft driver and that he had picked up her and a friend on August 30, 2019 to drive them home from Barnes & Noble. Mary and her friend got into the backseat of defendant's car, and he drove her friend home first. After dropping off the friend, Mary went to the front passenger seat. As defendant drove Mary to her home, which was in a neighboring town, the two shared aspects of their lives. Among other things, Mary told defendant that she was going to be a sophomore in high school.

---

[2] Mary disclosed her full birthdate. We, however, use the month and year to protect her identity.

A-2046-23

When they arrived at Mary's home, Mary asked for defendant's phone number. After Mary and defendant exchanged phone numbers, they had an "awkward goodbye[,]" during which defendant and Mary kissed on the lips.

Mary then testified, "[w]e had both mutually agreed that I was feeling a little hormonal," so defendant drove Mary to a nearby dead-end street. Mary told the jury that defendant parked the car, and she and defendant began "making out." Mary performed oral sex on defendant's penis. After which, defendant introduced Mary to spermicide, applied the cream to her "private" parts, and explained that it would prevent her from getting pregnant. Defendant then climbed on top of Mary, and he penetrated his penis into her vagina. During her time in defendant's car, defendant also touched Mary's breasts with his hands and mouth.

Following their intercourse, Mary asked defendant how old he thought she was. According to Mary, defendant replied that he thought she was "around eighteen." Mary told defendant she was fifteen years of age. As defendant drove Mary home, she pointed out the high school she attended.

Mary also explained to the jury that she and defendant exchanged text messages for approximately the next three weeks. Copies of the text messages

A-2046-23

were introduced into evidence and showed that Mary and defendant exchanged text messages between August 31, 2019 through September 24, 2019.

Mary initiated some of the text messages and defendant initiated others. In several texts messages, defendant asked to see Mary again. Mary initially declined those meetings telling defendant that she could not meet with him because of school, homework, or her 8:00 p.m. curfew.

In an exchange of text messages sent on September 5, 2019, defendant asked to get together with Mary. Mary questioned defendant: "[W]hat will happen if you [get] me pregnant?" Defendant responded: "We would take care of it so you don't. I'd support [your] decision and want you to know I'd take care of you." Mary continued to express concerns about getting pregnant and defendant texted her: "Okay. I'll wear a condom."

On September 21, 2019, Mary and defendant exchanged text messages and agreed to meet that night. Mary testified defendant picked her up at approximately 11:00 p.m. on a street corner near her home. Defendant took Mary to a juice bar and bought her a smoothie. Defendant then drove Mary to two different parking lots where they had sexual intercourse at each lot.

Mary told the jury that she continued exchanging text messages with defendant until September 24, 2019, when she stopped communicating with

defendant. She explained that she felt "uncomfortable" and that she "didn't feel [] it was right . . . [i]t was a very odd relationship." Approximately two months later, in November 2019, Mary disclosed the sexual incidents to a school therapist.

In his trial testimony, defendant acknowledged that he was the Lyft driver who picked up Mary and her friend on August 30, 2019. He explained that he was born on February 21, 1980, and that he had been thirty-nine years old in August and September 2019. He claimed that he thought Mary and her friend were at least eighteen years old when he picked them up on August 30, 2019.

Defendant denied having sexual intercourse or any inappropriate interactions with Mary at any time. He claimed they exchanged kisses on the cheeks when he dropped her off on August 30, 2019. Defendant acknowledged giving Mary his phone number and exchanging text messages with her over the next three weeks. Defendant claimed, however, that he could not recall the contents of the messages, but did not deny sending Mary messages.

Defendant also acknowledged picking Mary up on September 21, 2019, and taking her to a juice bar. He told the jury that he and Mary talked for a while, and he then drove Mary home. According to defendant, their

7

conversation "ended with [Mary] getting out of the car, giving [defendant] a hug, and then saying, . . . we'll talk . . . and it was just an awkward ending."

Detective Richmond also testified at trial. He explained his investigation of Mary's disclosures. He told the jury that Mary's date of birth was in December 2003, and defendant's date of birth was February 21, 1980.

After hearing all the testimony and considering the evidence, the jury convicted defendant of four crimes: second-degree sexual assault of Mary on August 30, 2019; fourth-degree criminal sexual contact with Mary on August 30, 2019; third-degree endangering the welfare of a child; and second-degree luring or enticing a child. The jury acquitted defendant of the charges of sexual assault and criminal sexual contact concerning the incident on September 21, 2019.

In February 2024, defendant was sentenced. On his conviction for sexual assault of a child, defendant was sentenced to seven years in prison. His conviction for criminal sexual contact was merged into his conviction for endangering the welfare of a child and he was then sentenced to four years in prison. On his conviction for luring, defendant was sentenced to seven years in prison. The sentences were all run concurrently. Defendant was also sentenced to registration and reporting under Megan's Law, N.J.S.A. 2C:7-1 to -23, and

prohibited from having contact with Mary under Nicole's Law, N.J.S.A. 2C:14-12 and N.J.S.A. 2C:44-8.

II.

Defendant now appeals from his convictions, making one argument, which he articulates as follows:

> THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE OF THE VICTIM'S AGE AND THUS NEVER ESTABLISHED A NECESSARY ELEMENT OF COUNTS ONE, THREE, FIVE, AND SIX (ISSUE NOT RAISED BELOW).

Defendant did not object to Mary's testimony concerning her date of birth or that she was fifteen years old when defendant sexually assaulted her. Nor did defendant contend at trial that the State provided insufficient evidence of Mary's age. Consequently, we review defendant's argument for plain error. State v. Clark, 251 N.J. 266, 286-87 (2022). An appellate court will reverse for plain error when the error was "clearly capable of producing an unjust result" and "only where the possibility of an injustice is 'real' and 'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Garcia, 245 N.J. 412, 437 (2021) (first quoting R. 2:10-2; and then quoting State v. Trinidad, 241 N.J. 425, 445 (2020)).

A-2046-23

To convict defendant of counts one and three, the State was required to prove that Mary was at least thirteen years old but less than sixteen years old at the time of the sexual assault and sexual contact. In that regard, an individual is guilty of sexual assault in the second degree if "the actor commits an act of sexual penetration with another person . . . [where] [t]he victim is at least [thirteen,] but less than [sixteen] years old and the actor is at least four years older than the victim." N.J.S.A. 2C:14-2(c)(4). An individual is guilty of fourth-degree criminal sexual contact in violation of N.J.S.A. 2C:14-3(b), "if he commits an act of sexual contact with the victim under any of the circumstances set forth in 2C:14-2(c)(1) through (5)."

To convict defendant of counts five and six, the State was required to prove that Mary was less than eighteen years old at the time of the offenses. In that regard, endangering the welfare of a child is a third-degree offense when an actor "engages in sexual conduct which would impair or debauch the morals of the child[.]" N.J.S.A. 2C:24-4(a)(1). Under N.J.S.A. 2C:13-6(a):

> A person commits a crime of the second[-]degree if he attempts, via electronic or any other means, to lure or entice a child or one who he reasonably believes to be a child into a motor vehicle, structure or isolated area, or to meet or appear at any other place, with a purpose to commit a criminal offense with or against the child.

"Child" as used in both those statutes is "any person under [eighteen] years of age."  N.J.S.A. 2C:24-4(b)(1); N.J.S.A. 2C:13-6(b).

Determining the age of a victim is a factual issue to be decided by the jury.  State v. May, 362 N.J. Super. 572, 594 (App. Div. 2003) (quoting State v. Carlone, 109 N.J.L. 208, 211 (Sup. Ct. 1932)) (explaining that "[l]ike any other fact, age is, of course, for the determination of the jury"); see also State v. Gerena, 465 N.J. Super. 548, 565 (App. Div. 2021) (stating that "the capacity of laypersons to approximate the ages of children is highly dependent on the facts and circumstances").

In making factual determinations, a jury "is free to accept or reject, in whole or in part, any aspect of testimonial evidence based on credibility."  State v. DiFerdinando, 345 N.J. Super. 382, 399 (App. Div. 2001) (citing State v. Coleman, 46 N.J. 16, 43 (1965)).  So, "[t]he jury's fact-finding function is all-inclusive and encompasses the evaluation of the credibility of witnesses and the weight and worth of evidence."  State v. Ingenito, 87 N.J. 204, 211 (1981).

We hold that the State presented sufficient evidence for the jury to conclude beyond a reasonable doubt that Mary was fifteen years old when defendant sexually assaulted her, had criminal sexual contact with her, endangered her, and lured her.  Mary testified to her specific date of birth, which

was in December 2003. Mary also explained to the jury that she was fifteen years old when she had sexual intercourse with defendant on August 30, 2019. Defendant testified that his date of birth was February 21, 1980. Indeed, he stipulated to his date of birth.

The jury clearly found Mary's testimony regarding her date of birth to be credible because they were instructed that the State had to prove she was at least thirteen and less than sixteen years old and was a child under eighteen years of age, to be convicted on the four offenses. Indeed, at trial, defendant never challenged Mary's date of birth or her testimony that she was fifteen at the time of the offenses. Consequently, Mary's testimony that she was fifteen years old at the time of the offenses was unrebutted. Therefore, the jury's verdict was supported by evidence establishing beyond a reasonable doubt that Mary was fifteen years old at the time of the offenses. See State v. Smith, 262 N.J. Super. 487, 512 (App. Div. 1993) (explaining "[w]here the jury's verdict was grounded on its assessment of witness credibility, a reviewing court may not intercede, absent clear evidence on the face of the record that the jury was mistaken or prejudiced") (citing State v. Haines, 20 N.J. 438, 446-47 (1956)).

Defendant contends that the State offered only "subjective" testimony concerning Mary's age and not "objective" evidence, like Mary's birth certificate

or passport. In making that argument, defendant relies on language from <u>State v. Perez</u>, 177 N.J. 540 (2003). The discussion of "objective" evidence in <u>Perez</u> is totally distinguishable from this case and does not support defendant's argument.

In <u>Perez</u>, the Court evaluated the sufficiency of the State's evidence on a defendant's conviction for child luring and attempted child endangerment. <u>Id.</u> at 544. The evidence in <u>Perez</u> established that the victim was thirteen years old when Perez twice tried to entice the child into his car. <u>Id.</u> at 544-45. The Court's focus in <u>Perez</u> was on whether the State had provided sufficient proof of defendant's intent to lure and attempt to endanger the welfare of the young girl. <u>Id.</u> at 552-54. In conducting that evaluation, the Court stated, "that the child-endangerment statute requires only objective proof that the alleged victim was a child under the age of sixteen, not that the accused knew or reasonably should have known that fact." <u>Id.</u> at 555. The Court did not hold or even suggest that the "objective proof" needed to be a document like a birth certificate as opposed to testimony. Consequently, the facts and issues evaluated in <u>Perez</u> are distinguishable from the argument defendant makes in this matter.

In making our holding, we point out that defendant's argument is inconsistent with well-established law concerning testimonial evidence

supporting the elements of a crime. Defendant himself does not dispute that Mary's testimony was sufficient evidence on which a jury could conclude beyond a reasonable doubt defendant had sexual intercourse with Mary. Consequently, if a jury can rely on a victim's testimony in finding a sexual assault, a jury can equally rely on the victim's testimony concerning her date of birth and age at the time of the assault. We, therefore, reject defendant's argument because it is not supported by any law and is inconsistent with well-established law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division