785 A.2d 945 (2001)
345 N.J. Super. 498
STATE of New Jersey, Plaintiff-Respondent,
v.
Timothy R. MENDEZ, Defendant-Appellant.
State of New Jersey, Plaintiff-Respondent,
v.
Jose L. Mendez, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted October 10, 2001.
Decided December 17, 2001.
*946 *947 Peter A. Garcia, Acting Public Defender, for appellants (Jay L. Wilensky, Assistant Deputy Public Defender, of counsel and on the brief in No. A-3895-99T4; Bernadette DeCastro, Assistant Deputy Public Defender, of counsel and on the brief in No. A-4801-99T4).
John J. Farmer, Jr., Attorney General, for respondent (Johanna Barba, Deputy Attorney General, of counsel and on the brief in Nos. A-3895-99T4 and A-4801-99T4).
Before Judges SKILLMAN, WALLACE, Jr. and WELLS.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
This appeal presents significant issues concerning the culpability requirement of the offense of eluding a law enforcement officer by motor vehicle and the kind of evidence required to support a conviction for tampering with physical evidence.
Defendants Jose and Timothy Mendez, who are brothers, were found guilty, after a joint trial before a jury, of various criminal offenses arising out of a police chase of their car during the evening of May 8, 1998. State troopers Jay Miller and Brian Mulholland testified that while on routine patrol in Alloway Township, Salem County, they observed a car straddling the center line of the roadway approaching in the opposite direction. After the troopers were forced to pull to the shoulder to avoid a collision, they made a U-turn, activated their overhead lights and siren, and began to follow the Mendez car. The driver, Jose, accelerated and went through several stop signs without stopping, swerved into the opposing lane of traffic, drove in excess of the speed limit, and crossed the lawn of a corner property. While the troopers were chasing the Mendez car, they observed Timothy in the front passenger seat discarding various items out the car window, including a piece of paper, a round object the size of a baseball, a beer bottle and what appeared to be a white powdery substance in a plastic bag. After the pursuit had continued for approximately five miles, defendants drove their car into the driveway of a private home. The troopers then placed defendants under arrest and searched the car, which resulted in the discovery of a police radio scanner and two glassine bags containing white powder that tested positive for cocaine.
Shortly thereafter, the troopers returned to the route of their pursuit of defendants to search for the items they had seen Timothy throw out the car window. They found a lottery ticket with a glassine bag and small straw inside it, which they deduced had been thrown from the car because it was dry and the ground was wet from rain earlier in the evening. However, the troopers were not able to find any white powder or the other items they had seen Timothy throw from the car.
Testifying on his own behalf, Jose denied going through stop signs or committing any other motor vehicle infractions during the troopers' pursuit of the car. However, he admitted recognizing the troopers at the outset of the chase, seeing their overhead lights go on, knowing that they wanted him to stop, and deliberately failing to do so. When asked why he did not stop immediately after the troopers activated their overhead lights, Jose responded:
Well, all the streets that we were on were all dark roads, and there's no there's really no room to pull a car over and you still be off the road, and there's no lights anywhere on none of those *948 roads, and it was dark. And I don't have the bestI don'twith the cops, me and the cops, they don't get along with me, period.
Timothy did not take the stand.
Based on this evidence, the jury found Jose guilty of second degree eluding a police officer, in violation of N.J.S.A. 2C:29-2b, and possession of a police scanner while in the course of committing or attempting to commit a crime, in violation of N.J.S.A. 2C:33-22. The jury found Timothy guilty of tampering with physical evidence, in violation of N.J.S.A. 2C:28-6(1), possession of a police scanner while in the course of committing or attempting to commit a crime, and the disorderly persons offense of resisting arrest, in violation of N.J.S.A. 2C:29-2a. The jury acquitted both defendants of possession of cocaine charges.
The court sentenced Jose to a seven year term of imprisonment for eluding and a concurrent nine month term for unlawful possession of a police scanner. The court sentenced Timothy to eighteen month terms of imprisonment for tampering with evidence and unlawful possession of a police scanner and six months for resisting arrest, all to be served concurrently.
Defendants filed separate appeals from their convictions, which we now consolidate. We reject the arguments raised in both appeals, and affirm defendants' convictions.

I
Jose Mendez's primary argument is that the trial court did not properly instruct the jury with respect to the charge of eluding. N.J.S.A. 2C:29-2b states in pertinent part:
Any person, while operating a motor vehicle on any street or highway in this State ..., who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle ... to a full stop commits a crime of the third degree; except that, a person is guilty of a crime of the second degree if the flight or attempt to elude creates a risk of death or injury to any person.[1]
Defendant argues that because eluding may consist of an "attempt[ ] to elude," the court was required to instruct the jury in accordance with the law of attempt, specifically that the State had to prove that defendant had the purpose to elude the police.
Defendant did not object to the court's eluding instruction at trial. Therefore, any error in this instruction would be grounds for reversal only if it were plain error. See State v. Afanador, 151 N.J. 41, 54, 697 A.2d 529 (1997).
The offense of eluding a law enforcement officer by motor vehicle was not part of the original Code of Criminal Justice (Code) enacted in 1978, L. 1978, c. 95, and, unlike most other offenses proscribed by the Code, it is not derived from the Model Penal Code. Although similar provisions may be found in the laws of a number of other jurisdictions, see, e.g., Colo.Rev.Stat. § 18-9-116.5 (1999); Or.Rev.Stat. § 811.540 (1999); Wis. Stat. § 346.04 (1999), we have not been able to locate any case authority pertinent to the issue presented in this appeal. Therefore, we must decide the issue solely on the basis of the language of N.J.S.A. 2C:29-2b and the general structure of the Code.
Mirroring the Model Penal Code, chapter five of the Code recognizes a basic *949 distinction between "substantive" criminal offenses and "inchoate" offenses such as attempts and conspiracies. See New Jersey Criminal Law Revision Commission, the New Jersey Penal Code, Vol. II: Commentary, (hereinafter New Jersey Penal Code Commentary), Introductory Note to Ch. 5, at 111-13 (1971). The defining characteristic of an inchoate offense is "conduct ... designed to culminate in the commission of a substantive offense." Id. at 111. Thus, "these offenses always presuppose a purpose to commit another crime." Ibid. (quoting Model Penal Code (Tentative Draft No. 10, 1960), art. 5 commentary at 24-26).
Consistent with this view of inchoate offenses, "N.J.S.A. 2C:5-1 makes criminal all attempts to commit other crimes defined in the Code, when certain circumstances are present." State v. Robinson, 136 N.J. 476, 484, 643 A.2d 591 (1994). Those circumstances are set forth in N.J.S.A. 2C:5-1a, which provides:
A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:
(1) Purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be;
(2) When causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing such result without further conduct on his part; or
(3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.
The common characteristic of the three forms of criminal attempts proscribed by N.J.S.A. 2C:5-1a is that "the actor must have for his purpose engaging in the criminal conduct or accomplishing the criminal result which is an element of the substantive crime." New Jersey Penal Code Commentary, supra, cmt. 3 on 2C:5-1 at 114; see Robinson, supra, 136 N.J. at 484-86, 643 A.2d 591.
Viewed in light of these principles, it is evident that the offense of eluding a law enforcement officer by motor vehicle is a substantive criminal offense rather than an inchoate offense involving an attempt to commit another offense. First of all, N.J.S.A. 2C:29-2b was enacted as an amendment to the resisting arrest provision in chapter twenty-nine of the Code, L. 1981, c. 290, § 28, which proscribes substantive criminal offenses, rather than chapter five, which proscribes attempts and other inchoate offenses.[2] Moreover, eluding consists simply of fleeing by motor vehicle from a person who the perpetrator knows to be a law enforcement officer. See State v. Seymour, 289 N.J.Super. 80, 86-87, 672 A.2d 1273 (App. Div.1996). Eluding does not involve an attempt to commit any other substantive offense.
Most importantly, N.J.S.A. 2C:29-2b includes a culpability requirement that is different from the culpability requirement of an attempt. Although a person must act with the "purpose" to commit a substantive offense to be found guilty of an attempt, Robinson, supra, 136 N.J. at 484, 643 A.2d 591, the offense of eluding consists simply of "knowingly" fleeing or *950 attempting to elude a law enforcement officer by motor vehicle after receiving a signal to stop. See State v. Fuqua, 303 N.J.Super. 40, 44, 696 A.2d 44 (App.Div. 1997).
The Code recognizes four different kinds of culpability, which are separately defined in the subsections of N.J.S.A. 2C:2-2(b): (1) "purposely," (2) "knowingly," (3) "recklessly" and (4) "negligently." The Code also recognizes that "the material elements of offenses ... may involve (1) the nature of forbidden conduct, ... (2) the attendant circumstances or (3) the result of conduct." New Jersey Penal Code Commentary, supra, cmt. 3 on 2C:2-2 at 40 (1971). A culpability requirement applies with respect to each of these types of material elements. Ibid.[3] Where the applicable culpability requirement is "knowingly":
A person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that the conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence. A person acts knowingly with respect to a result of his conduct if he is aware that it is practically certain that his conduct will cause such a result.

[N.J.S.A. 2C:2-2(b)(2).]
The "attendant circumstances" of eluding under N.J.S.A. 2C:29-2b are that the defendant must "hav[e] received [a] signal... to bring the vehicle ... to a full stop" and the person giving the signal must have been a "police or law enforcement officer." The "forbidden conduct" is "flee[ing] or attempt[ing] to elude." The material elements of eluding do not include any required "result" of such conduct.
The only culpability requirement set forth in N.J.S.A. 2C:29-2b is "knowingly." N.J.S.A. 2C:2-2(c)(1) provides that "[w]hen the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears."[4] Therefore, "unless a contrary purpose plainly appears," the culpability requirement of both the attendant circumstances of being signaled to stop by a law enforcement officer and the forbidden conduct of fleeing or attempting to elude is "knowingly."
Defendant does not dispute that the culpability requirement of the attendant circumstance elements of eluding that the defendant had received a signal to stop and that the person giving the signal was a law enforcement officeris "knowingly." However, defendant contends that because the "forbidden conduct" element of eluding includes not only "flee[ing]" but also "attempt[ing] to elude," the culpability requirement for this element is "purposely."
This argument cannot be reconciled with the legislative determination that the culpability requirement of eluding under N.J.S.A. 2C:29-2b is "knowingly" and the constructional rule of N.J.S.A. 2C:2-2(c)(1) that a culpability requirement applies to all elements of an offense unless a contrary intent "plainly appears." Although *951 the phrase "knowingly attempts," which does not appear anywhere in the Model Penal Code, may initially appear internally inconsistent because the culpability requirement of a criminal attempt is "purposeful" conduct, N.J.S.A. 2C:5-1a, the use of the word "attempts" in the definition of a substantive offense does not necessarily reflect a legislative intent to import the law of attempt, including the "purposeful" culpability requirement, into that offense. Instead, the probable legislative intent in defining the conduct element of eluding as "flees or attempts to elude" rather than "flees or eludes" was to foreclose any argument that success in avoiding police apprehension is an element of the offense, as is the case with certain other offenses proscribed by chapter 29, such as escape (N.J.S.A. 2C:29-5).[5] The phrase "attempts to elude" makes it clear that the conduct forbidden by N.J.S.A. 2C:29-2b is the act of flight or eluding, and that the elements of the offense do not include a "result" element of success in avoiding apprehension by a law enforcement officer.[6]
Because the culpability requirement of the conduct element of eluding is "knowingly" rather than "purposely," the State was not required to prove that Jose's "conscious object," N.J.S.A. 2C:2-2(b)(1), in fleeing from the troopers was to avoid apprehension. Instead, the State was only required to prove he was "aware" that he was fleeing from the troopers. N.J.S.A. 2C:2-2(b)(2); see State v. Speth, 323 N.J.Super. 67, 87, 731 A.2d 1232 (App.Div. 1999) (holding that the "knowingly" culpability requirement of the offense of witness tampering, which proscribes "knowingly attempt[ing]" to induce a witness to give false testimony (see n. 5 infra), can be satisfied by showing that "defendant [was] aware that he was attempting to tamper with a witness.").[7]
*952 In instructing the jury, the trial court provided adequate guidance concerning the "knowingly" culpability requirement of eluding:
[T]he State must prove beyond a reasonable doubt each of the following six elements. First, that Jose Mendez was operating a motor vehicle on a street or highway in this State. Second, that Trooper Mulholland was a police or law enforcement officer. Third, that Jose Mendez knew that Trooper Mulholland was a police or law enforcement officer. Fourth, that Trooper Mulholland signaled Jose Mendez to bring the vehicle to a full stop. Fifth, that Jose Mendez knew that the officer had signaled him to bring the vehicle to a full stop. And, sixth, that Jose Mendez fled or attempted to elude the officer.
Again, a person acts knowingly with respect to the attendant circumstances of his conduct if he is aware that such circumstances exist or he is aware of a high probability of their existence. Knowing or with knowledge or equivalent terms have the same meaning.
Although the trial court also could have informed the jury that it had to find Jose was "aware" he was fleeing the police during the pursuit, this requirement was implicit in the court's instructions that the State had to prove that Jose "knew" Trooper Mulholland was a law enforcement officer and "knew" that Mulholland had signaled him to stop. Moreover, it is clear that even under Jose's own version of the events of May 8, 1998, he had the knowledge required to support his conviction for eluding. According to Jose, he knew that the persons in the State Police car were State troopers and, when the troopers activated their overhead lights, he also knew that they wanted him to stop. But despite this knowledge, he drove his car a distance of approximately five miles with the State troopers in pursuit. Therefore, the trial court did not commit plain error in instructing the jury regarding the "knowingly" culpability requirement of eluding.

II
Defendant Timothy Mendez's primary argument is that his conviction for tampering with physical evidence must be vacated because his release of a white powdery substance out the car window during the police chase did not constitute evidence tampering. This offense is proscribed *953 by N.J.S.A. 2C:28-6(1), which provides:
A person commits a crime of the fourth degree if, believing that an official proceeding or investigation is pending or about to be instituted, he:
(1) Alters, destroys, conceals or removes any article, object, record, document or other thing of physical substance with purpose to impair its verity or availability in such proceeding or investigation....
The State's theory was by releasing the white powder into the air Timothy "alter[ed]" or "destroy[ed]" the substance "with the purpose to impair its ... availability" in a police investigation.
In arguing that the evidence was insufficient to support a conviction for evidence tampering, Timothy relies primarily upon our decision in State v. Sharpless, 314 N.J.Super. 440, 457-59, 715 A.2d 333 (App. Div.), certif. denied, 157 N.J. 542, 724 A.2d 802 (1998), which held that a drug dealer could not be found guilty of this offense for dropping bags containing drugs on the ground as the police approached him. The focus of our decision in Sharpless was the distinction between "conceal[ment]" of evidence, which is proscribed by N.J.S.A. 2C:28-6(1), and "abandonment" of evidence, which is not a crime:
Persons who possess criminal contraband generally seek to keep it hidden from others, especially the police. It is common, for example, for drug dealers to maintain their supply of drugs some place other than on their persons. It is also common for persons who possess criminal contraband to discard it upon the approach of the police. Consequently, if such conduct were held to constitute tampering with evidence, any person in possession of contraband who took any steps to prevent the police from discovering the contraband could be charged not only with the possessory offense but also with tampering with evidence. Absent a clearer indication that this was the Legislature's intent in enacting N.J.S.A. 2C:28-6, we decline to reach this conclusion. Instead, consistent with the court's interpretation of N.J.S.A. 2C:29-3b(1) in Fuqua, we construe the phrase "conceal[ment]" of "any article ... with the purpose to impair its availability in [an investigation]" in N.J.S.A. 2C:28-6 to refer only to "evidence of a completed criminal act, not a current possessory crime." Fuqua, supra, 303 N.J.Super. at 47, 696 A.2d 44. Under this analysis, defendant's abandonment of his drug supply occurred during the course of his ongoing possession of heroin with the intent to distribute and consequently did not constitute tampering with evidence.

[Id. at 459, 715 A.2d 333.]
The Supreme Court of Pennsylvania's decision in Commonwealth v. Delgado, 544 Pa. 591, 679 A.2d 223 (1996), which we relied upon in Sharpless, also turned on the distinction between "concealment" and "abandonment" of evidence. In concluding that the defendant's act of discarding drugs as he was being pursued by the police would not support a conviction for the Pennsylvania counterpart to N.J.S.A. 2C:28-6(1), the court stated:
[Defendant's] act of discarding contraband in plain view of the police does not rise to a level of conduct that constitutes the destruction or concealment of evidence as contemplated by the statute. The act of throwing the bag of cocaine while being chased by the police was nothing more than an abandonment of the evidence.

[Id. at 225.]
On the other hand, the Pennsylvania courts have recognized that a person who destroys or attempts to destroy drugs at *954 the time of an arrest or police stop may be found guilty of evidence tampering. See, e.g., Commonwealth v. Morales, 447 Pa.Super. 491, 669 A.2d 1003, 1005-06 (1996) (affirming conviction for evidence tampering of defendant who swallowed apparent heroin when stopped by police); Commonwealth v. Govens, 429 Pa.Super. 464, 632 A.2d 1316, 1328-29 (1993) (affirming conviction for evidence tampering of defendant who flushed cocaine down the toilet as police entered his apartment), appeal denied, 539 Pa. 675, 652 A.2d 1321 (1994).
The Tennessee Court of Criminal Appeals has construed Tennessee's counterpart to N.J.S.A. 2C:28-6(1) in a similar manner. In State v. Patton, 898 S.W.2d 732, 736 (Tenn.Crim.App.1994), appeal denied, (Tenn. 1995), the court held that a defendant who "toss[ed] aside" a bag of marijuana as the police were chasing him could not be found guilty of evidence tampering because this conduct constituted "mere abandonment" of contraband. On the other hand, in State v. Logan, 973 S.W.2d 279, 281-82 (Tenn.Crim.App.1998), the court affirmed a conviction for evidence tampering of a defendant who "successfully destroyed the contents of twelve... bags [of cocaine] by placing them in the toilet."
The courts in other jurisdictions have also held, consistent with Sharpless, that simply throwing away contraband as the police approach does not constitute "concealment" that will support a conviction for evidence tampering, see e.g., Vigue v. State, 987 P.2d 204, 206-11 (Alaska Ct. App.1999); In re M.F., 315 Ill.App.3d 641, 248 Ill.Dec. 463, 734 N.E.2d 171, 175-79 (2000), but that swallowing drugs or other conduct that makes contraband unavailable to the police constitutes "destruction" of evidence that will support a conviction for this offense. See, e.g., Frayer v. People, 684 P.2d 927 (Colo.1984) (affirming conviction for evidence tampering for breaking bottle of narcotic cough syrup during arrest); Lewis v. State, 56 S.W.3d 617, 624-26 (Texas Ct.App.2001) (affirming conviction for evidence tampering for swallowing cocaine during police stop of vehicle).
In this case, the State's evidence showed that Timothy Mendez held a bag containing a white powdery substance, which the State hypothesized was cocaine, outside the window of a moving car during a police chase, allowing the substance to dissipate into the air and thus causing it to become unavailable as evidence. This conduct was comparable to swallowing or flushing drugs down a toilet, which the courts in other jurisdictions have held to constitute "destruction" of evidence within the intent of evidence tampering statutes similar to N.J.S.A. 2C:28-6(1). See, e.g., Morales, supra, 669 A.2d at 1005-06; Govens, supra, 632 A.2d at 1328-29; Logan, supra, 973 S.W.2d at 281-82; Lewis, supra, 56 S.W.3d at 624-26. Such conduct does not constitute mere abandonment of evidence and is sufficient to support a conviction for evidence tampering.
Timothy also argues that even if the State's evidence would have supported a conviction for evidence tampering, the trial court committed plain error by failing to instruct the jury that it had to find, beyond a reasonable doubt, that the evidence he allegedly tampered with was not contained in the glassine bags found in the search of the car. However, there is nothing in the language of N.J.S.A. 2C:28-6(1) or Sharpless that precludes a defendant from being found guilty of tampering with evidence derived from the same source as unlawfully possessed contraband. Therefore, the jury verdict sheet question as to whether the evidence Timothy allegedly tampered with came from the same bags later found in the Mendez car was *955 superfluous, and any error in the jury instructions relating to that question was harmless.

III
Defendants' other arguments do not require extensive discussion. Defendants argue that the reversal of Jose's conviction for eluding and Timothy's conviction for evidence tampering also would require the reversal of their convictions for unlawful possession of a police radio scanner, because possession of a scanner during the commission or attempt to commit another offense is one of the elements of that offense. Our affirmance of the eluding and evidence tampering convictions moots this argument. In addition, Jose argues that the seven-year term of imprisonment imposed upon him for second degree eluding was excessive. This argument is clearly without merit. R. 2:11-3(e)(2).
Affirmed.
NOTES
[1] As a result of a 1995 amendment, L. 1995, c. 401, § 54, N.J.S.A. 2C:29-2b now also applies to eluding by "any vessel" as defined in N.J.S.A. 12:7-7l.
[2] We recognize that a few inchoate offenses, such as possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4, are placed in sections of the Code outside of chapter five. See State v. Harmon, 104 N.J. 189, 203-04, 516 A.2d 1047 (1986).
[3] For a general discussion of the culpability requirements contained in the Model Penal Code, which were incorporated in the Code of Criminal Justice, see Paul H. Robinson and Jane A. Grall, Element Analysis in Defining Criminal Liability: The Model Penal Code & Beyond, 35 Stan. L.Rev. 681 (1983).
[4] For a discussion of this section, see American Law Institute, Model Penal Code & Commentaries, Part I § 2.02, cmt. 6 at 245-46 (Official Draft and Revised Comments 1985).
[5] This also was the apparent legislative intent in using the phrase "knowingly attempts" in several other sections of the Code. See N.J.S.A. 2C:28-5 ("knowingly attempts to induce or otherwise cause a witness or informant to: (1) Testify or inform falsely; (2) Withhold any testimony, information, document or thing; (3) Elude legal process summoning him to testify or supply evidence; or (4) Absent himself from any proceeding or investigation to which he has been legally summoned."); N.J.S.A. 2C:12-11 ("knowingly... attempts to exercise unlawful control over a firearm or other weapon in the possession of a law enforcement or corrections officer.").
[6] We recognize that another panel of this court has indicated, without explanation, that in a prosecution for witness tampering, which consists of "knowingly attempt[ing] to induce or otherwise cause" false testimony, N.J.S.A. 2C:28-5(a)(1), the jury must be instructed that the offense "incorporates a requirement for purposeful action or omission." State v. Crescenzi, 224 N.J.Super. 142, 147, 539 A.2d 1250 (App.Div.), certif. denied, 111 N.J. 597, 546 A.2d 520 (1988). We respectfully disagree with this interpretation of the phrase "knowingly attempts," at least as applied to the offense of eluding.
[7] The Model Jury Instructions, as amended in 1999, state in pertinent part:

In order to convict the defendant of third degree eluding, the state must prove beyond a reasonable doubt each of the following six (6) elements:
1. That [defendant] was operating a motor vehicle on a street or highway in this state.
2. That [the officer] was a police or law enforcement officer.
3. That [the officer] signaled [defendant] to bring the vehicle to a full stop.
4. That [defendant] knew that the officer had signaled (him/her) to bring the vehicle to a full stop.
5. That [defendant] knew that [the officer] was a police or law enforcement officer.
6. That defendant knowingly fled or attempted to elude the officer.
....
Mere failure to stop does not constitute flight. To find flight, you must find that the defendant's purpose in leaving was to avoid being stopped by the officer.
A person attempts to perform an act if (he/she) does or omits to do anything with the purpose of performing that act without further conduct on (his/her) part, or purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step planned to culminate in the performance of that act.
A person acts purposely with respect to the nature of (his/her) conduct or a result thereof if it is (his/her) conscious object to engage in conduct of that nature or to cause such a result.
A person acts knowingly with respect to the attendant circumstances of his/her conduct if he/she is aware that such circumstances exist, or is aware of a high probability of their existence. "Knowing" or "with knowledge" or equivalent terms have the same meaning.
(Emphasis added.)
Although the part of this instruction following the six listed elements appears inconsistent with the first part and fails to clearly specify the culpability requirement applicable to each of the elements of eluding, it seems to indicate that the culpability requirement of the attendant circumstances is "knowingly" but that the culpability requirement of the forbidden conduct is "purposely." Therefore, this instruction is inconsistent with our interpretation of N.J.S.A. 2C:29-2b, and must be modified.