999 A.2d 1236

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
EDWARD C. KUHN, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted May 25, 2010—Decided August 6, 2010.

90

Before Judges WEFING, GRALL and LeWINN.

*Yvonne Smith Segars,* Public Defender, attorney for appellant (*Alyssa Aiello,* Assistant Deputy Public Defender, of counsel and on the brief).

*Paula T. Dow,* Attorney General, attorney for respondent (*Jeanne Screen,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

GRALL, J.A.D.

On August 30 and 31 and September 2 and 7, 2004, defendant Edward C. Kuhn had a series of Internet and phone conversations with investigators from the Atlantic County Prosecutor's Office who represented themselves as "Mandi," a thirteen-year-old girl. They eventually arranged to meet at a bowling alley on September 8, and defendant was arrested after he arrived and called the bowling alley phone to reach Mandi.

The grand jurors for Atlantic County charged defendant with fourteen attempts to commit crimes that prohibit conduct with children who are thirteen years old, *N.J.S.A.* 2C:5–1: five counts of second-degree attempted luring based on his conduct on August 30 and 31 and September 2 and 7, *N.J.S.A.* 2C:13–6 (counts one, five, nine, ten and eleven); three counts of third-degree attempted endangering based on his conduct on August 30 and 31 and September 8, *N.J.S.A.* 2C:24–4 (counts two, six and fourteen); three counts of attempted second-degree sexual assault by penetration based on his conduct on August 30 and 31 and September 8, *N.J.S.A.* 2C:14–2c (counts three, seven and twelve); and three counts of fourth-degree attempted criminal sexual contact based on his conduct on August 30 and 31 and September 8, *N.J.S.A.* 2C:14–3b (counts four, eight and thirteen). Defendant was tried to a jury and convicted on every count.

The judge merged defendant's convictions for attempted criminal sexual contact and endangering with his convictions for attempted luring on the same date. Thus, the judge imposed sentences for eight second-degree crimes. Defendant's aggregate sentence is a term of imprisonment for fourteen years. With the exception of a consecutive seven-year term of incarceration imposed for the act of attempted sexual assault on September 8, the sentences are concurrent with the seven-year term imposed for the act of luring on August 30. The judgment of conviction includes defendant's obligation to comply with Megan's Law and pay fines, penalties, assessments and fees and forfeit his computer.

All of the crimes were charged as attempted crimes because Mandi is fictional and the investigators are adults. The crimes committed on September 7 and 8 were attempts for an additional reason; although defendant took steps to complete "a course of conduct planned to culminate in ... the crime[s]," he had not committed all of the acts that "would constitute the crime." *N.J.S.A.* 2C:5–1a(1), (3).

Because the judge did not instruct the jurors on the State's obligation to prove defendant's steps toward commission of the crimes on September 7 and 8 were "substantial" and "strongly corroborative of [defendant's] criminal purpose[s]," *N.J.S.A.* 2C:5–1a(3) and b, we reverse his convictions on counts ten through fourteen. Finding no other error warranting reversal, we affirm the remaining convictions.

On August 30, 2004, Investigator Thomas Finan of the Atlantic County Prosecutor's Office was working in the Computer Crimes Unit, Child Predator Program. In that role, he portrayed himself as a child using the Internet. He had created an on-line profile for Mandi, which included a picture of a female investigator that was taken when she was ten years old and had long hair. Mandi's screen name was "sojerzeygrl1991," which Finan intended to suggest a child born that year. In the space designated for hobbies, Mandi wrote, "Boys, Boys, and what else? . . . oh Boyz!"

On August 30, Mandi entered a "chat room" known as "Romance, Regional, New Jersey." Mandi did not contact anyone in the chat room. Defendant, using his screen name "watchmestrokin2003," sent Mandi a message. It said, "hey." Mandi replied saying nothing but "hey." Defendant complimented Mandi's picture and identified himself as Ed. In the exchanges that followed during that session, Mandi disclosed that she lived with her father, who was not home. In response to defendant's questions, she said she was thirteen and had shoulder-length hair. Defendant told Mandi he would love to brush her hair and asked if he could come to her room and brush it. When she said not now, defendant asked when he could, questioned her about her father's work hours and whether she wore a uniform with a skirt when she went to school.

Defendant moved to the present, inquired about what Mandi was wearing at the moment and gave her graphic, step-by-step instructions that ended with an instruction to digitally penetrate herself. As defendant gave instructions, he inquired as to wheth-

er Mandi was complying. Next, defendant used a web camera to send Mandi a live feed of himself masturbating.

On August 31, there was a second session. Defendant asked Mandi to call him, and another investigator, posing as Mandi, placed the call. Mandi mentioned her age again, and defendant, transmitting a live feed from his web camera to Mandi, repeated the performance he had given the day before.

Thereafter, they returned to instant messaging and defendant repeated the graphic instructions he had given Mandi the day before. He also asked Mandi to meet him the next day. When she said she could not meet in the morning because she had cheerleading practice, he said he would pick her up after practice and take her to lunch. He described his car and the bandana he would be wearing.

Mandi did not meet defendant the next day. That afternoon defendant sent her a message inquiring about where she was, but Mandi did not respond. On the same day, the investigators learned defendant's identity from his cell phone carrier and the type of car registered in his name from the Division of Motor Vehicles.

On the morning of September 2, Mandi sent defendant a message apologizing for not responding to his message of September 1. She sent a second message that night, and they conversed by instant messaging. Defendant discussed the possibility of meeting the next day, but Mandi declined because of her schedule and the fact that she was getting ready to move to her mother's house. Defendant directed Mandi to remove her clothing, but she declined. She told defendant she would have more freedom when she moved to her mother's home. They talked about meeting on September 7.

On September 3, Mandi responded to a message defendant sent. Throughout that day, however, Mandi made excuses to end the on-line conversations and avoid sessions over the upcoming holiday weekend.

Early on the morning of September 7, Mandi sent defendant a message saying the she had a plan in place for the following day. Defendant responded and asked about the plan, and Mandi specified a bowling alley as the meeting place. When she asked what they would do after they met, defendant suggested taking a drive in his car. He inquired about what Mandi would wear, said it should be something "sexy" and suggested a skirt and a thong. He also told her he would be bringing cameras and asked if she would mind if he took still and video pictures. In an on-line conversation later that night, defendant asked Mandi if she "wanted him."

On September 8, defendant did not appear at the bowling alley at 1:00 p.m. At 1:15 p.m., the investigator who had impersonated Mandi during prior phone conversations, called defendant's cell phone and left a message with the number of the bowling alley. Defendant called the number, told Mandi he was on his way and arrived about five or ten minutes later. He drove to the back of the bowling alley and dialed the number he had used on the last call. Mandi was paged.

Finan arrested defendant, who was wearing the bandana as promised. A warrant authorizing a search of his car was obtained and cameras he said he would bring were recovered. Defendant waived his right to remain silent after receiving the advisements required by *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966), and eventually admitted that he had seen Mandi's profile and that he knew she was thirteen years old.

Defendant raises the following issues on appeal:

I. BECAUSE A PERSON CANNOT BE GUILTY OF ATTEMPTING TO COMMIT SEXUAL ASSAULT OF, OR CRIMINAL SEXUAL CONTACT WITH, A CHILD WHEN NO CHILD ACTUALLY EXISTS, THE TRIAL JUDGE SHOULD HAVE GRANTED [DEFENDANT]'S MOTION TO DISMISS THE COUNTS OF THE INDICTMENT THAT ALLEGED THOSE OFFENSES. ALTERNATIVELY, THE JUDGE ERRED WHEN HE MATERIALLY ALTERED THE DEFINITIONS OF SEXUAL ASSAULT OF, AND CRIMINAL SEXUAL CONTACT WITH, A CHILD BY ELIMINATING THEIR STRICT–LIABILITY ELEMENT AND REPLACING IT WITH HIS OWN STANDARD OF CULPABILITY.

 A. A Person Cannot Be Guilty Of Attempting To Commit Sexual Assault Of, Or Criminal Sexual Contact With, A Child When No Child Actually Exists.

 B. Alternatively, The Trial Judge Erred When He Materially Altered The Definitions Of Sexual Assault Of, And Criminal Sexual Contact With, A Child By Removing Their Strict–Liability Element.

II. [DEFENDANT]'S CONVICTIONS FOR ATTEMPTED SEXUAL ASSAULT OF A CHILD AS CHARGED IN COUNTS THREE, SEVEN AND TWELVE, AND ATTEMPTED CRIMINAL SEXUAL CONTACT WITH A CHILD AS CHARGED IN COUNT THIRTEEN, MUST BE REVERSED BECAUSE THE JUDGE CHARGED THE JURY ON THE WRONG THEORY OF ATTEMPT LIABILITY. (Not Raised Below).

III. THE JUDGE ERRED IN DENYING [DEFENDANT]'S MOTION FOR JUDGMENT OF ACQUITTAL ON THE CHILD–LURING OFFENSES CHARGED IN COUNTS TEN AND ELEVEN. IN THE ALTERNATIVE, THE CHARGES CONTAINED IN THESE COUNTS WERE DUPLICITOUS BECAUSE THEY BOTH RELATED TO [DEFENDANT]'S ALLEGED ATTEMPT TO LURE "MANDI" TO THE BOWLING ALLEY ON SEPTEMBER 8TH[, 2004].

IV. THROUGHOUT HER OPENING STATEMENT AND AGAIN IN SUMMATION, AND OVER REPEATED OBJECTION[S] BY DEFENSE COUNSEL, THE PROSECUTOR IMPROPERLY DIVERTED THE JURY'S ATTENTION FROM THE FACTS BY MAKING INFLAMMATORY REMARKS, WHICH INCLUDED LIKENING THE "WAR" ON DRUGS TO THE FIGHT AGAINST "THESE PREDATORS" WHO THREATEN THE "SAFETY OF [OUR] HOMES" AND "TRAUMATIZE" OUR CHILDREN.

V. THE COURT'S DECISION TO RUN [DEFENDANT]'S SENTENCE ON COUNT TWELVE CONSECUTIVE TO THE OTHERS WAS AN ABUSE OF DISCRETION, AND THE MID–RANGE SENTENCES THAT [DEFENDANT] RECEIVED WERE EXCESSIVE GIVEN THAT [DEFENDANT] WAS 44 YEARS OLD, HIS ONLY PRIOR CONTACTS WITH THE CRIMINAL JUSTICE SYSTEM WERE A DISORDERLY CONDUCT CONVICTION IN 1985 AND A PETTY THEFT CONVICTION IN 1989, HE DEMONSTRATED EXTREME REMORSE FOR HIS ABERRANT BEHAVIOR, AND HE WAS ALREADY SUCCESSFULLY PARTICIPATING IN A REHABILITATION PROGRAM.

I

■ The law governing the question raised by defendant in Point I is settled. "[W]hen the consequences sought by a defendant are forbidden by the law as criminal, it is no defense that the defendant could not succeed in reaching his goal because of circumstances unknown to him." *State v. Moretti*, 52 *N.J.* 182, 187–91, 244 *A.*2d 499 (concluding that the fact that the woman was

not pregnant did not preclude liability for conspiracy to unlawfully terminate a pregnancy and would not negate culpability for the crime of attempted unlawful abortion), *cert. denied,* 393 *U.S.* 952, 89 *S.Ct.* 376, 21 *L.Ed.*2d 363 (1968). In *Moretti,* the Court rejected the "intricacies" of the common law "impossibility" defense to attempt as having "little value as an analytical method for reaching substantial justice" and because of its potential for yielding "absurd" results. *Id.* at 189, 244 *A.*2d 499. The Court adopted the approach suggested by the drafters of the Model Penal Code and "h[e]ld that when the consequences sought by a defendant are forbidden by the law as criminal, it is no defense that the defendant could not succeed in reaching his goal because of circumstances unknown to him." *Id.* at 190, 244 *A.*2d 499.

The principles enunciated by the Supreme Court in *Moretti* and, prior to that by this court in *State v. Meisch,* 86 *N.J.Super.* 279, 281–82, 206 *A.*2d 763 (App.Div.) (a case involving an effort to steal from a drawer that, unknown to the defendant, was empty), *certif. denied,* 44 *N.J.* 583, 210 *A.*2d 627 (1965), are incorporated in the statute defining the elements of criminal attempt, *N.J.S.A.* 2C:5–1. *See* II *The New Jersey Penal Code, Final Report of the N.J. Criminal Law Revision Commission,* 114–15, cmt. 4 on *N.J.S.A.* 2C:5–1 (1971) (*Final Report* ).

*N.J.S.A.* 2C:5–1 provides:

> A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:
>
> (1) *Purposely* engages in conduct which would constitute the crime *if the attendant circumstances were as a reasonable person would believe them to be;*
>
> . . . .
>
> (3) *Purposely* does or omits to do anything which, *under the circumstances as a reasonable person would believe them to be,* is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.
>
> [ (Emphasis added).]

The language set forth with emphasis above incorporates the rule in *Moretti.* If a person whom the defendant believes to be a child is an adult, then the defendant's subjective belief that the victim is a child suffices to impose liability for attempt just as the

defendant's subjective belief that the woman was pregnant substituted for that condition in *Moretti*. The rule as codified in *N.J.S.A.* 2C:5–1a(1) and (3) is modified, however. The modification redounds to the benefit of a defendant whose belief is not reasonable under the circumstances. *Ibid.*

This court has applied *N.J.S.A.* 2C:5–1 to conduct quite similar to the conduct in this case—Internet communications between an adult male and an investigator posing as a child on the Internet followed by the arrangement of a sexual liaison. *State v. Condon,* 391 *N.J.Super.* 609, 612–13, 617, 919 *A.*2d 178 (App.Div.), *certif. denied,* 192 *N.J.* 74, 926 *A.*2d 857 (2007). The charges against the defendant in *Condon* included "second-degree attempted sexual assault of a victim 'he believed to be a thirteen-year-old female,' *N.J.S.A.* 2C:14–2c(4) and *N.J.S.A.* 2C:5–1 (Count One), and third-degree endangering the welfare of a child, *N.J.S.A.* 2C:24–4 (Count Two)." *Id.* at 611–12, 919 *A.*2d 178.

*N.J.S.A.* 2C:5–1 applies here as well. As in *Condon*, there is an element of the "crimes" that are "attempted" that cannot be established—the age of the victim. The sexual assaults and sexual contacts alleged to have been committed by defendant required a thirteen-year-old victim and a defendant at least four years older, *N.J.S.A.* 2C:14–2c(4) and *N.J.S.A.* 2C:14–3b; luring required a victim under the age of eighteen, *N.J.S.A.* 2C:13–6; and endangering required a child under the age of sixteen, *N.J.S.A.* 2C:24–4b. But with respect to the age of the victim, *N.J.S.A.* 2C:5–1a(1) and (3) permit convictions for the attempted crimes without regard to the actual age of the victim if it was defendant's purpose to engage in the conduct with a person that age—i.e., if he believed or hoped the victim was a child that age, *N.J.S.A.* 2C:2–2b(1), and a "reasonable person" would believe that the victim was that age. *N.J.S.A.* 2C:5–1a(1), (3). Accordingly, we reject defendant's claim that he cannot be convicted of these attempted crimes because Mandi was not a thirteen-year-old child.

Defendant presents an additional argument to establish that he cannot be guilty of these attempts because Mandi was not a child

of the requisite age. Relying on *State v. Darby,* 200 *N.J.Super.* 327, 491 *A.*2d 733 (App.Div.1984), *certif. denied,* 101 *N.J.* 226, 501 *A.*2d 905 (1985), he contends that because the crimes themselves do not require proof that defendant acted with purpose relevant to the victim's age, attempt may not be charged. We cannot agree.

*Darby* has no relevance here. "The common characteristic of the three forms of criminal attempts proscribed by *N.J.S.A.* 2C:5–1a is that 'the actor must have for his purpose engaging in the criminal conduct or accomplishing the criminal result which is an element of the substantive crime.'" *State v. Mendez,* 345 *N.J.Super.* 498, 505, 785 *A.*2d 945 (App.Div.2001) (quoting *Final Report, supra,* cmt. 3 on 2C:5–1 at 114), *aff'd,* 175 *N.J.* 201, 814 *A.*2d 1043 (2002). *Darby* addressed the applicability of the attempt statute to felony murder, a crime that has a result element and is governed by subsection a(2) of *N.J.S.A.* 2C:5–1. Subsection a(2) specifically requires that the actor have "the purpose of causing [the] result." *See State v. Rhett,* 127 *N.J.* 3, 7, 601 *A.*2d 689 (1992) (discussing *Darby* and concluding that attempt is not established by proof of "anything less than purposeful conduct" as to causing death).

The age of the victim is not a "result" element of the crimes at issue here; it is an attendant circumstance. *See Mendez, supra,* 345 *N.J.Super.* at 506–08, 785 *A.*2d 945 (discussing the three types of elements recognized in the Code—conduct, attendant circumstances and result—and the definitions of the culpability terms that correspond to each type); *see also State v. Robinson,* 136 *N.J.* 476, 486, 643 *A.*2d 591 (1994) (noting that *Rhett* does not bar an instruction on attempted provocation manslaughter because the defendant's state of mind as to the result is purposeful and the actor's culpability is mitigated "due to circumstances present at the time").

Contrary to defendant's argument, there is no "conceptual discord" between a conviction for an offense that does not require proof of any awareness or negligence about the victim's age and conviction for purposely engaging in conduct that would constitute

the crime or be a substantial step in a course of conduct planned to culminate in its commission. With respect to the attendant circumstance—age of the victim—an actor's conduct is purposeful "if he is aware of the existence of such circumstances *or [if]* he believes or hopes that they exist." *N.J.S.A.* 2C:2–2b(1) (emphasis added). There is no logical inconsistency of the sort involved when one speaks of purposefully attempting to commit an accidental homicide or injury less serious than death, as there was in *Darby* and *Rhett*.

Defendant raises an alternative argument in Point I. In his view, the judge erred by altering the definitions of sexual assault and criminal sexual contact when he instructed the jury on the elements of attempt to commit those crimes. We disagree.

The judge crafted an instruction to reflect what the State was required to establish in order to prove that defendant attempted to commit those crimes. Without a doubt, the State was required to prove that defendant's actions were done purposely. *See N.J.S.A.* 2C:5–1a(1), (3). And, consistent with that essential element, the judge explained what the law required to establish that defendant acted purposely with respect to the attendant circumstance—age. The judge did that by providing the definition of purposely that is quoted above, and explaining that the jurors had to find that defendant believed Mandi was of the age required for conviction. Because Mandi was not thirteen, however, the judge also was required to, and did, explain that the jurors had to find that the State proved that his belief was reasonable under the circumstances. *N.J.S.A.* 2C:5–1a(1), (3).

The passages of the instruction that defendant quotes in support of his argument that this was error do not reflect error. They establish that the judge accomplished the task of explaining the mental state, purpose as to age, and the limitation that precludes conviction for an attempt when an actor's belief about the victim's age is unreasonable.

## II

■ In Point II of his brief, defendant asserts that the judge erred by failing to instruct the jurors in accordance with subsection a(3) of *N.J.S.A.* 2C:5–1 with respect to the crime of sexual assault and criminal sexual conduct. He contends that he cannot be convicted of those crimes without a finding that he took a substantial step toward completing them.

This argument relies on the distinction between subsection a(1) and subsection a(3) of *N.J.S.A.* 2C:5–1. The distinction is based on whether defendant has completed the acts or omissions—the conduct, *N.J.S.A.* 2C:1–14d, that the State must prove to obtain a conviction. Subsection a(1) applies when the person has *"engage[d] in conduct which would constitute the crime* if the attendant circumstances were as a reasonable person would believe them to be . . . ." (emphasis added). In contrast, subsection a(3) applies when the defendant has not completed the actions necessary but only if he has *"[p]urposely do[ne] or omit[ted] to do anything which,* under the circumstances as a reasonable person would believe them to be, *is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."* (emphasis added). In this case the judge instructed the jurors on subsection a(1), but the judge did not instruct the jurors on subsection a(3).

The State's evidence was sufficient to permit the jurors to find that defendant engaged in conduct constituting the crimes charged prior to September 7. Defendant's use of his web camera to stream video of his masturbation and self-fondling to Mandi on August 30 and August 31 was "conduct which would constitute" criminal sexual contact if Mandi had been thirteen. *N.J.S.A.* 2C:5–1a(1); *N.J.S.A.* 2C:14–3b; *N.J.S.A.* 2C:14–1d. Similarly, by instructing Mandi to digitally penetrate her own vagina on August 30 and 31, defendant "[p]urposely engage[d] in conduct which would constitute the crime" of sexual assault charged if she were thirteen. *N.J.S.A.* 2C:5–1a(1); *N.J.S.A.* 2C:14–2c(4); *N.J.S.A.* 2C:14–1c. The same can be said for endangering and luring on the dates prior to September 7. With respect to those charges, an

instruction on the elements of attempt under subsection a(1) was appropriate.

In contrast, the evidence did not establish that defendant "engage[d] in conduct which would constitute [those] crime[s]" on September 7 and 8. Defendant's actions on those dates were insufficient to "constitute" the crimes. Thus, the jurors could not find defendant guilty unless they found that what defendant did "constitut[ed] a substantial step in a course of conduct planned to culminate in his commission of th[ose] crime[s]." *N.J.S.A.* 2C:5–1a(3). On September 7, defendant did nothing other than return Mandi's calls and instant messages, suggest the clothing she should wear the next day, ask if she "wanted him" the next day and respond to her inquiry about what they would do by suggesting a drive in his car or a walk.[1] On September 8, he returned another phone call, showed up to meet Mandi at the bowling alley and placed a call to have her paged.

■ We do not minimize the strength of the State's evidence supporting a finding that there were substantial steps in a course of conduct designed to culminate in the commission of an additional sexual assault, criminal sexual contact, luring and endangering on September 7 and 8. Nonetheless, we cannot affirm convictions based on the strength of the evidence if the jury has not been given the instructions essential to determine whether the State established a defendant's guilt beyond a reasonable doubt. *See, e.g., Rhett, supra,* 127 *N.J.* at 7–8, 601 *A.*2d 689. As in *Condon,* with respect to defendant's actions on September 7 and 8, the jury could not find defendant guilty without finding that he had taken a "substantial step" that was "strongly corroborative of [his] criminal purpose." *N.J.S.A.* 2C:5–1a(3), b; *see Condon, supra,* 391 *N.J.Super.* at 617–18, 919 *A.*2d 178. Accordingly, the convictions on counts ten through fourteen must be reversed.[2]

---

[1] Defendant was not charged with attempted endangering on September 7.

[2] Although defendant has not argued that his convictions for attempted luring on September 7 and 8 and attempted endangerment on September 8 were

There is no merit to defendant's alternative claim relevant to the counts charging luring on September 7 and 8—that the "rule against duplicity" bars the separate counts. *State v. New Jersey Trade Waste Ass'n*, 96 *N.J.* 8, 22, 472 *A.*2d 1050 (1984). That rule applies when two or more distinct and separate offenses are joined in a single count of an indictment. *Ibid.*

Accordingly, we reverse defendant's convictions on counts ten through fourteen and remand for trial with the other charges based on his conduct on September 7 and 8. We affirm his convictions on counts one through nine because the jurors were given proper instructions on those crimes.

### III

■ The remaining issues raised by defendant require no more than a brief explanation for our conclusion that the arguments do not warrant reversal of defendant's convictions or modification of his sentence. *R.* 2:11–3(e)(2).

■ When the State's evidence, viewed in the most favorable light and with the benefit of all favorable inferences, is adequate to permit the jurors to find the essential elements of the crimes, a motion for judgment of acquittal must be denied. *State v. Reyes*, 50 *N.J.* 454, 458–59, 236 *A.*2d 385 (1967). The evidence was adequate to permit the jury to consider whether defendant attempted to lure Mandi into his car on September 7 and 8 by taking a substantial step in a course of conduct designed to culminate in that crime.

---

erroneously submitted to the jurors pursuant to subsection a(1) of *N.J.S.A.* 2C:5–1, we conclude that the error is of sufficient magnitude to warrant a new trial despite defendant's failure to include those convictions in his argument on *N.J.S.A.* 2C:5–1a(3). As discussed in the next section of this opinion, the evidence of luring on September 7 and 8 and endangerment on September 8 was insufficient to permit submission of the charges pursuant to subsection a(1) but not insufficient to permit submission pursuant to subsection a(3) of *N.J.S.A.* 2C:5–1.

While Mandi made the initial contact on September 7, defendant responded and asked about her plan for the meeting they were trying to arrange. Moreover, when she asked him what they would do after they met, he suggested that they take a drive, told Mandi what to wear, asked about the color of the thong she would select and inquired as to whether she "wanted him." Similarly, Mandi made the first call on September 8, but defendant told her he was on his way to the bowling alley and arrived within minutes. When he arrived, he called the phone in the bowling alley and asked to have Mandi paged. While defendant's conduct on September 7 and 8 was not sufficiently complete to permit submission to the jury pursuant to *N.J.S.A.* 2C:5–1a(1), it was sufficient to permit the jurors to consider attempt pursuant to *N.J.S.A.* 2C:5–1a(3).

■ Turning to consider defendant's objections to the prosecutor's arguments, we agree with defendant that the assistant prosecutor's general discussion of the nature of Internet crimes and their threat to children was inappropriate material for the State's opening and closing statements as was the prosecutor's display, during opening, of a photograph depicting defendant and a person not involved in these crimes. The prosecutor's speculation in closing about what defendant might have been doing on the days that he had no contact with Mandi was also inappropriate. Viewed in context, however, including the judge's prompt corrective instruction in response to the improper display of the photograph and the speculation, we cannot conclude that the argument was capable of depriving defendant of a trial by jurors fairly evaluating the evidence. *State v. Josephs,* 174 *N.J.* 44, 124, 803 *A.*2d 1074 (2002); *State v. Marshall,* 123 *N.J.* 1, 161, 586 *A.*2d 85 (1991), *cert. denied,* 507 *U.S.* 929, 113 *S.Ct.* 1306, 122 *L.Ed.*2d 694 (1993); *State v. Manley,* 54 *N.J.* 259, 270, 255 *A.*2d 193 (1969); *State v. Blanks,* 190 *N.J.Super.* 269, 279–80, 463 *A.*2d 359 (App. Div.1983).

We address defendant's objections to the seven-year terms imposed, but there is no reason to address his objection to the

consecutive sentence on count twelve because we have vacated that conviction. After considering the record in light of our standard of review, it is clear that there is no basis for disturbing the judge's decision to impose a sentence near the middle of the range for these second-degree crimes. *State v. Bieniek*, 200 *N.J.* 601, 607–08, 985 *A.*2d 1251 (2010); *State v. Cassady*, 198 *N.J.* 165, 180–81, 966 *A.*2d 473 (2009).

## IV

In conclusion, defendant's convictions on counts one through nine are affirmed. His convictions on counts ten through fourteen are reversed, and those counts are remanded for a new trial.